OPINION OF THE COURT
Edwin Kassoff, J.
By this action, plaintiff seeks judgment declaring a certain “Professional Comprehensive Umbrella Policy” issued by defendant to be effective with regard to a claim against plaintiff and for damages for the defendant’s failure to defend an action brought on that claim. By an order dated December 10, 1980, a default judgment was taken against the defendant for its failure to appear and answer. Pursuant to an agreement between the parties, that order is vacated and the matter was submitted to this court for decision on the merits. The submission is upon an agreed statement of facts and copies of defendant’s insurance policies.
Plaintiff is a dermatologist who is being sued for damages allegedly resulting from professional negligence. Plaintiff treated the claimant from 1964 through 1971 with the alleged negligent treatment occurring between 1964 and 1967. The injury claimed was discovered in August, 1977. In three successive policies, defendant insured plaintiff providing, in essence, coverage in excess *726 over the underlying primary liability policies. Defendant’s policies were for terms commencing May 7, 1965 and ultimately ending on May 7, 1974. The initial policy term ended May 7, 1968.
The defendant denies that the policies issued by it are effective to cover the claim against plaintiff. Its contention is based upon the assertion that its policies are of the “occurrence” type and cover accidents resulting in injury during the policy period. In support of this position, defendant relies on a contract definition of occurrence which is said to mean “an accident *** which results, during the policy period, in personal injury * * * neither expected nor intended from the standpoint of the insured.” Based on this definition, defendant concludes that the discovery of injury after the end of the last policy term was an occurrence outside the coverage excluding plaintiff from protection under the policy.
The primary coverage set forth in the insuring agreement covering the term up to 1968 is for “ultimate net loss in excess of the retaining limit which the insured shall become obligated to pay as damages for personal injury *** resulting from occurrences during the policy period.” “ ‘Ultimate net loss’ is the sum plaintiff is liable for after making proper deduction for all recoveries collectible”. “Retaining limit” is defined as “the total of any underlying insurance collectible by the insured.” Thus, it is clear that defendant agreed to insure plaintiff for all losses in excess of primary coverage up to the policy limits.
The court has carefully reviewed the entire policy issued to the plaintiff for the term ending in 1968 and does not find any definition of “occurrence” consistent with that advocated by defendant. The definition relied on by defendant appears in the policies covering the terms from May, 1968 through May, 1974. Thus, the court must read the initial policy as not containing the advocated definition of occurrence.
Insurance policies are construed liberally in favor of the insured and strictly against the insurer but, in any event, are given the plain and ordinary meaning of the words when the provisions of the policy are clear and unambiguous. (Government Employees Ins. Co. v Kligler, 42 NY2d *727 863; McGroarty v Great Amer. Ins. Co., 36 NY2d 358, 364.) Any fair reading of the policy covering the initial term requires the conclusion that the covered risk does not depend on injury being discovered within the policy period. As quoted above, defendant agreed to insure against “damages for personal injury *** resulting from occurrences during the policy period.” The words can only mean occurrences or acts committed during the policy period and not personal injury being discovered during that period.
In addition to the primary coverage, there is a rider attached to that contract which includes coverage to the plaintiff for “loss in excess of the retained limit which the insured shall become legally obligated to pay as damages because of injury arising out of ‘Professional Liability’.” The rider agreement defines “Professional Liability” to mean “injury arising out of malpractice, error or mistake in rendering and failing to render professional services in the practice of the named insured’s profession as a dermatologist, committed during the policy period.” This insuring agreement in no way uses the term “occurrence” and cannot be read to exclude coverage for negligent acts charged to the plaintiff as having been committed during the policy period.
Since the complaint and bill of particulars in the claim against plaintiff charge medical malpractice as a dermatologist in giving improper X-ray treatments between 1964 and 1967, coverage must be afforded to the plaintiff under the clear, unequivocal terms of the initial policy.
The definition of occurrence relied on by defendant, and constituting the thrust of its resistance to providing coverage, is set forth in the second and third policies issued to the plaintiff. Assuming, without deciding, that the defendant’s interpretation of occurrence is accurate, the court notes that occurrence is used only in defining the extent of insurance in Coverage A of the policy.* Coverage B, in both policies, provides that the defendant will pay “on *728 half of the named insured *** loss which the named insured shall become legally obligated to pay, in excess of the applicable limits of the underlying professional liability policy *** because of injury arising out of: (1) malpractice, error or mistake * * * in the rendering or failing to render professional services * * * committed during the policy period in the practice of the named insured’s profession”. The declarations page of the policy identifies the profession as “dermatologist”. Again, the clear, unambiguous language of the policy does not use the term “occurrence” in defining the extent of coverage which cannot be taken to be other than for acts of professional negligence committed during the policy period. Under the circumstances, plaintiff is granted judgment on his first cause of action and the court declares that the defendant is responsible to pay, to the extent of policy limits, any loss which the plaintiff may become legally obligated to pay as the result of any acts of professional negligence which the claimant may ultimately prove were committed during any of the three policy periods.
By the second cause of action, plaintiff seeks recovery of $25,000 as damages for the defendant’s breach of the insuring agreement in failing to defend the claim against him. In this regard, the court notes that the conditions section of all three insuring agreements provides that “the company shall not be called upon to assume charge of the settlement or defense of any claim made or proceeding instituted against the insured”. In addition, the policy covering the initial period provides that the defendant shall defend plaintiff “with regard to any occurrence not covered by the underlying policy *** but covered by the terms and conditions of this policy”. In all three policies, under the conditions dealing with underlying insurance, it is provided that “the company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured” under circumstances where the “underlying policy of insurance is exhausted”.
Nothing contained in the complaint or set forth in the facts agreed to on this submission demonstrates that the underlying insurance was exhausted or that it did not *729 covér the risk at issue here. Under the circumstances, defendant’s policy clearly provides that it is not obligated to defend plaintiff in this case. It is clear from a reading of the entire policy that defendant is an excess insurer and defense of any litigation will be provided in the first instance by the primary liability carrier. Under the circumstances, judgment on the plaintiff’s second cause of action is granted to the defendant.

 American Motorists Ins. Co. v Squibb & Sons (95 Misc 2d 222), relied on by defendant, interprets similar policy language to make coverage dependent on results, not acts. That case does not consider the difficult question of whether coverage should include, as the policy appears to state, injuries occurring during the term which do not become discovered until some time later.
Further, that court clearly distinguishes between the “occurrence” and “malpractice”