651 F.2d 838
 Daniel VARGAS, as Personal Representative and Administrator
of the Goods, Chattels and Credits of Blanca
Khurey, Deceased, Plaintiff-Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.
Samuel PLOTKIN, as Public Administrator of the County of
Kings, and as Personal Representative and
Administrator of the Goods, Chattels and
Credits of Joseph Khurey,
Deceased, Plaintiff-Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.
 No. 981, Docket 80-9109.
 United States Court of Appeals,
Second Circuit.
 Argued April 9, 1981.
Decided June 15, 1981.
 
 1
 Steven R. Pounian, New York City (Paul S. Edelman, Milton G. Sincoff, Kreindler & Kreindler, New York City, and Singer & Block, Brooklyn, N. Y., on brief), for plaintiffs-appellants.
 
 
 2
 Einar M. Rod, New York City (James J. Sentner, Jr., and Haight, Gardner, Poor & Havens, New York City, on brief), for defendant-appellee.
 
 
 3
 Before TIMBERS and NEWMAN, Circuit Judges and SOFAER, District Judge.*
 
 SOFAER, District Judge:
 
 4
 This is an appeal from a grant of summary judgment to defendant-appellee Insurance Company of North America ("INA") in a declaratory judgment action brought to determine whether INA is liable under an aviation insurance policy issued to Joseph Khurey for his single-engine Piper Arrow. The policy, issued on December 13, 1977, provided in part that it would apply "only to occurrences, accidents or losses which happen ... within the United States of America, its territories or possessions, Canada or Mexico." An endorsement, added to the policy on December 14, 1977, extended the territorial limits to include the Bahama Islands.
 
 
 5
 On December 23, 1977, Khurey, his wife, and his daughter were killed when the plane crashed into the sea approximately twenty-five miles west of Puerto Rico. The family had been traveling from New York to Puerto Rico, and they had stopped in Miami and Haiti to rest and refuel. The crash occurred on the last leg of the trip, while the Khureys were en route from Haiti to Puerto Rico. Puerto Rico is a "territory" of the United States. 48 U.S.C. § 731 (1976).
 
 
 6
 INA denied insurance coverage on the ground that the loss did not occur "within" the United States, its territories, or its possessions. INA claims that the policy covers losses that occur only in the enumerated areas or in territorial waters within three miles adjacent to the coasts of such areas. Appellants read the language more broadly, to include coverage for losses that occur while the plane is traveling between two points that are both within areas expressly covered.
 
 
 7
 Under New York law, which governs this case, an ambiguous provision in an insurance policy is construed "most favorably to the insured and most strictly against the insurer." Index Fund, Inc. v. Insurance Company of North America, 580 F.2d 1158, 1162 (2d Cir. 1978), cert. denied, 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979). The insurer bears a heavy burden of proof, for it must " 'establish that the words and expressions used (in the insurance policy) not only are susceptible of the construction sought by (the insurer) but that it is the only construction which may fairly be placed on them.' " Filor, Bullard & Smyth v. Insurance Company of North America, 605 F.2d 598, 602 (2d Cir. 1978), cert. denied, 440 U.S. 962, 99 S.Ct. 1506, 59 L.Ed.2d 776 (1979) (quoting Lachs v. Fidelity & Casualty Co. of New York, 306 N.Y. 357, 365-66, 118 N.E.2d 555, 559 (1954)). The insurer is "obliged to show (1) that it would be unreasonable for the average man reading the policy to (construe it as the insured does) and (2) that its own construction was the only one that fairly could be placed on the policy." Sincoff v. Liberty Mutual Fire Insurance Co., 11 N.Y.2d 386, 390, 230 N.Y.S.2d 13, 16, 183 N.E.2d 899, 901 (1962). Thus, the question in this case is narrow: is the insurer's interpretation of the contract the only reasonable and fair construction as a matter of law? The District Court granted summary judgment for appellee, concluding that the policy could not reasonably be construed to cover any loss that occurs beyond the territorial limits of the United States or its possessions, Canada, or Mexico. We disagree.
 
 
 8
 The policy is readily susceptible of a reasonable and fair interpretation that would cover the flight at issue in this case. The policy was for an airplane, which is not merely an object but also a mode of transportation, capable of long-distance travel over water as well as land. The parties knew that the plane would fly substantial distances as it transported the insured and various passengers to their contemplated destinations. The policy, moreover, provided coverage for losses both within the continental United States and within territories more than three miles beyond the continental United States. It is reasonable to construe this coverage of United States territories (some of which are ocean islands), not as restricted to the airspace immediately above them, but rather as including destinations to and from which the plane could travel without forfeiting coverage. Appellants' construction is more consistent with the realities of airplane travel. So long as the plane is on a reasonably direct course from and to geographic areas covered by the policy, the plane could reasonably be said to be within the contemplated territorial limits. Coverage of "ordinary and customary" routes has frequently been implied in analogous marine insurance contracts. See, e. g., 9 Couch on Insurance, § 37:1476 (2d ed. 1962). If the plane were flown on an unreasonable course between two covered points, coverage could be lost.
 
 
 9
 Appellants' construction is supported by the language of the policy. The territory clause limits coverage to occurrences "within the United States of America, its territories or possessions, Canada or Mexico." The word "within" can reasonably be construed to mean "inside the borders" of the places specified. On the other hand, the term can also reasonably be construed to mean "inside an area that includes the places specified as well as such area as must be crossed in passing to and from the places specified." The policy's "Extension of Territorial Limits Endorsement" is consistent with the latter construction. The endorsement is phrased, not in terms of specific places, but rather in terms of "geographical limits"; and the controlling clause provides that the "limits set forth in the (c)onditions of this policy ... are extended to include" the places covered by the endorsement. Thus, the "limits" may be read as describing the outside boundaries of an area within which flights, on reasonable routes, are covered.
 
 
 10
 Appellee concedes that this construction is appropriate with respect to specific places covered by an Extension of Territorial Endorsement. It acknowledges that the insured "requested an endorsement to cover flights to the Bahamas." Appellee's Brief at 13 (emphasis added). The extension was not explicitly drafted to include the Bahama Islands and the route over which a plane would have to fly to get to and return from the Bahamas. Yet, the addition of "The Bahama Islands" to the covered territory reasonably implied that trips to and from those islands, on reasonable routes, would also be covered. Otherwise, an insured would be forced to ship his plane to and from places covered by the policy, although those places are well within the aircraft's known range and capacity. If inclusion of "The Bahama Islands" carries with it inclusion of any reasonable route to and from those islands, then the policy itself should be construed to include reasonable routes to and from any location covered by the policy's territory clause, and within the aircraft's known capacity.
 
 
 11
 Appellee argues that the terms of the insurance contract are so clear that the court need not resort to rules of construction. The coverage provision of the contract is in fact ambiguous, and the insurer could have avoided that ambiguity by defining the territorial limits with more precision. Had appellee wished to preclude coverage for trips to and from places included in the territory provision, language to accomplish that objective was readily available. As Judge Frankel stated in Pan American World Airways, Inc. v. Aetna Casualty & Surety Co., 368 F.Supp. 1098 (S.D.N.Y.1973), aff'd, 505 F.2d 989 (2d Cir. 1974):
 
 
 12
 Where the risk is well known and there are terms reasonably apt and precise to describe it, the use of substantially less certain phraseology, upon which dictionaries and common understanding may fairly differ, is likely to result in interpretations favoring coverage rather than exclusion.
 
 
 13
 368 F.Supp. at 1118.
 
 
 14
 In Peerless Insurance Co. v. Sun Line Helicopters, Inc., 180 So.2d 364, 365-66 (Fla.App.1965), the policy applied "only to occurrences ... while the aircraft is within the United States of America (excluding Alaska), its territories or possessions, Canada or Mexico, or its being transported between ports thereof ...." An emergency during a flight between the United States and Puerto Rico caused the pilot to crash-land on an island in the Bahamas. The trial court found the words "being transported between ports" to be ambiguous, and it therefore construed them to include situations in which the plane was transporting a pilot between places covered by the territory condition. In affirming, the appellate court deemed it significant that the insurance company had amended its policy on another aircraft owned by the insured to limit coverage for transportation between ports to situations in which the aircraft was "dismantled," thus making clear that actual flights were not covered. The policy in this case is even more ambiguous than that originally issued in Peerless, and the insurer bears the responsibility for not adopting a clear exclusion. See Filor, Bullard & Smyth v. Insurance Co. of North America, supra, 605 F.2d at 602.
 
 
 15
 In support of its position that its construction is the only reasonable one, appellee contended at oral argument that flights over waters beyond the territorial limits pose special dangers, for which insureds should be required to pay extra premiums; and it notes that Khurey had rejected an offer to cover the entire Caribbean. This ostensible appeal to commercial commonsense does not withstand analysis. The fact that coverage of the entire Caribbean, including the ocean areas, cost only an additional fifty dollars undermines the argument that substantial additional risks are involved. Moreover, INA offers no evidence that over-water flights between covered locations are more dangerous than flights over points anywhere within the United States, Canada, Alaska, and Mexico areas that are expressly covered by the policy and that include vast mountain ranges, lakes, deserts, and urban centers with heavy air traffic. Commonsense and experience contradict INA's assertion that over-water flights add materially to these explicitly covered risks.
 
 
 16
 In fact, it is appellee's construction that appears unreasonable in terms of aviation practice. If the policy excluded coverage for all flights over waters beyond the territorial limits, then flights between certain points within the continental United States would have to stay within the territorial limits in order to remain covered. Yet the most direct routes between many points within the continental United States pass over waters beyond the territorial limits; for example, the most direct route from New York City to Miami takes aircraft more than three miles beyond the coast. The same is true of many other routes, including routes between points within the territorial United States and points in Mexico, Canada, or Alaska, all of which are areas covered by the policy. Were INA's construction accepted, a pilot would be required to follow a less-direct route to avoid losing coverage, and the economic and air-safety consequences of utilizing indirect routes are likely to be far more significant than the cost of covering routes between areas expressly covered, as suggested by INA's price quotation for coverage for the Caribbean. Moreover, inducing aircraft to fly within three miles of the coast, or to risk losing coverage, might well be inconsistent with air-safety practices and rules. The record is barren of evidence as to the likely effects of INA's construction upon, for example, landing patterns at coastal airports that can take planes more than three miles off the coast. INA's assertion that its construction is supported by the reduced safety of flights beyond the territorial limits must be weighed against safety implications of using indirect routes in lieu of more direct, over-water routes.
 
 
 17
 Another factor that undermines appellee's case for summary judgment is the intent of the parties. See, e. g., Lipsky v. Commonwealth United Corp., 551 F.2d 887, 896 (2d Cir. 1976); Skandia America Reinsurance Corp. v. Schenck, 441 F.Supp. 715, 723-24 n.13 (S.D.N.Y.1977); Kessler Export Corp. v. Reliance Insurance Co., 207 F.Supp. 355, 358 (E.D.N.Y.), aff'd, 310 F.2d 936 (2d Cir. 1962). In this case, Khurey revealed in his original insurance application his intention to fly the insured aircraft outside the United States. He responded affirmatively to a question on the application, "Will aircraft be used outside Continental United States?"; and to the request for details, he replied, "for vacations." It was in fact on a flight outside the continental United States, during a Christmas vacation, that Khurey and his family were killed. In addition, appellants allege that Khurey's wife came from Puerto Rico and that the family expected to vacation there occasionally. Appellants have not had an opportunity to prove this allegation or to establish that INA agents knew of Khurey's intentions. But the purported intention is entirely consistent with a belief on Khurey's part that the insurance policy covered flights between the United States and Puerto Rico.
 
 
 18
 Because appellee failed to prove that its construction of the insurance policy was the only fair and reasonable one, the decision granting it summary judgment is reversed. On the present record, the appellants, rather than the appellee, are entitled to summary judgment on the coverage issue. INA may, however, raise factual questions that would render summary judgment in appellants' favor inappropriate. This and other issues will be for the trial court to determine on remand.
 
 
 19
 The order of the District Court is reversed, and the case is remanded for proceedings consistent with this opinion.
 
 
 
 *
 Hon. Abraham D. Sofaer of the United States District Court for the Southern District of New York, sitting by designation