**EMONS INDUSTRIES, INC., Plaintiff,**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY and Reserve Insurance Company, Defendants.**

**No. 75 Civ. 3227 (KTD).**

United States District Court, S.D. New York.

July 7, 1983.

Slade Pellman & Biehl, New York City, for plaintiff; Frederick R. Biehl, John F. Triggs, Susan C. Lushing, Anthony P. Coles, New York City, of counsel.

Dinsmore & Shohl, Cincinnati, Ohio, and Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant Liberty Mut. Fire Ins. Co.; Gerald V. Weigle, Jr., Cincinnati, Ohio, Michael E. Twomey, New York City, and Christopher C. Mansfield, Boston, Mass., of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for The Home Ins. Co.; Sheila L. Birnbaum, Irene A. Sullivan, Barbara Wrubel, New York City, of counsel.

Brobeck, Phleger & Harrison, San Francisco, Cal., for Fibreboard Corp.; E. Judge Elderkin, William R. Irwin, Donald W. Brown, Tom M. Freeman, San Francisco, Cal., of counsel.

Anderson Russell Kill & Olick, P.C., New York City, for Keene Corp.; Eugene R. Anderson, New York City, of counsel.

Hall, Henry, Oliver & McReavy, San Francisco, Cal., for Fireman's Fund Ins. Co.; Stephen McReavy, Jeffrey Kaufman, Stephen Dennis, Wallace M. Tice-Wallner, Eleanor Minsky, San Francisco, Cal., of counsel.

Williams & Connolly, Washington, D.C., and Windels, Marx, Davies & Ives, New York City, for American Motorists Ins. Co.; John J. Buckley, Jr., Washington, D.C., J. Daniel Mahoney, New York City, of counsel.

Rogovin, Huge & Lenzner, Washington, D.C., and Cravath, Swaine & Moore, New York City, for E.R. Squibb & Sons, Inc.; Harry Huge, Saul B. Goodman, Washington, D.C., Robert S. Rifkind, New York City, of counsel.

Clifford & Warnke, Washington, D.C., for Abbott Laboratories; Harold D. Murry, Jr., John G. Calender, Washington, D.C., of counsel.

Covington & Burling, Washington, D.C., for The Upjohn Co.; Robert N. Sayler, Washington, D.C., of counsel.

Baker & Daniels, Washington, D.C., and Baker & Daniels, Indianapolis, Ind., for Eli Lilly and Co.; Peter C. Ward, Michael A. Nardolilli, Washington, D.C., Theodore R. Boehm, Christopher G. Scanlon, Indianapolis, Ind., of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

This protracted litigation surrounds the liability of insurance companies for illnesses resulting from diethylstilbestrol ("DES"), a drug that was prescribed to pregnant women to prevent miscarriage. In the latest stage of this litigation, plaintiff Emons Industries, Inc. ("Emons") moves for summary judgment contending that under the terms of Comprehensive General Liability ("CGL") policies issued to it by defendant Liberty Mutual Fire Insurance Company ("Liberty"), Emons is entitled to indemnification for any claims arising from its distribution of DES between 1948 and 1971.[1] In

---

1. In a prior decision, I stayed all proceedings against defendant Reserve Insurance Company ("Reserve"). *See Emons Industries, Inc. v. Liberty Mutual Insurance Co.,* 545 F.Supp. 185

response, Liberty contends that summary judgment is inappropriate because the present record contains genuine questions of material facts. I will assume familiarity with the history of this case that has been outlined in prior decisions and only recite relevant facts.

Prior to 1966, the CGL policy which Liberty sold to Emons provided that Liberty would

> pay on behalf of [Emons] all sums which [Emons] shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

*Triggs Affidavit, Exhibit D.* The policy, however, contained no definition of either a "bodily injury" or an "accident."

In 1966, the CGL was modified in three respects. First, the indemnification provision was revised to provide that Liberty would

> pay on behalf of [Emons] all sums which [Emons] shall become legally obligated to pay as damages because of bodily injury, . . . sustained by any person and caused by an occurrence.

*Id.,* Exhibit C. Second, bodily injury was defined to mean "bodily injury, sickness or disease . . . which occurs during the policy period." *Id.* Finally, the CGL defined occurrence to mean

> an accident, including continuous or repeated exposure to conditions, which results in bodily injury . . . neither expected nor intended from the standpoint of the insured.

*Id.* To date Emons has settled at least seven DES lawsuits for which it has not been indemnified by Liberty. Liberty contends that it is not required to indemnify

Emons because the injuries that form the basis for these lawsuits did not manifest themselves while Liberty insured Emons.[2]

Emons argues, in essence, in support of its summary judgment motion that the policies Liberty issued were ambiguous on the question of coverage for DES injuries. Specifically, plaintiff suggests that it is unclear when "bodily injury" as defined by the policies actually occurs with regard to DES and triggers coverage. The ambiguity of "occurrence" is also cited. All ambiguities, Emons contends, are to be construed against the insurer in accordance with the insurance doctrine of *contra proferentem.*[3] Emons strenuously argues that proper construction of the ambiguities in the insurance policies should follow the "comprehensive coverage" theory adopted in an asbestos case by the United States Court of Appeals for the District of Columbia Circuit in *Keene Corp. v. Insurance Company of North America,* 667 F.2d 1034 (D.C.Cir. 1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982) ("Keene"). This theory provides coverage for the exposure period, the "exposure in residence" period, and the manifestation period. *Id.,* at 1047.

Liberty, and other insurance companies who filed amici briefs,[4] dispute that the issued CGL policies were ambiguous and argue that even if the plain meaning of various clauses is not evident from the policies alone, resort to the *contra proferentem* doctrine is premature.

In particular, Liberty asserts that factual questions surround the meaning of several phrases in the CGL policies and the parties' reasonable expectations at the time they entered into the insurance agreements in issue. In addition, Liberty contends that until I have heard medical evidence concerning the etiologies of the DES-related

---

(S.D.N.Y.1982). Reserve insured Emons from November 1970 through November 1971.

**2.** This defense, commonly referred to as the "manifestation theory," seeks to limit coverage to injuries that manifest themselves during the effective dates of the policy.

**3.** *Contra proferentem* has been defined as "[a]gainst the party who proffers or puts for-

ward a thing." Black's Law Dictionary 393 (4th ed. 1968). This Latin phrase, used in all of the briefs, is not defined otherwise by the parties.

**4.** The novel and complex issues presented by this case dictate that all applications for leave to file amicus briefs be granted.

diseases, and evidence on the issue of the parties' contractual intent, the insurance contracts in question cannot be interpreted properly. Plaintiff's reliance on *Keene* is also attacked; the logic of *Keene* and its applicability to the DES context is questioned. Defendant contends that in *Keene* and in other asbestos cases, a liability determination was reserved until medical evidence was proffered.

The standard CGL policies issued to Emons did not describe in detail their applicability to insidious diseases. I am thus left with policies that do not proscribe their boundaries with sufficient clarity and therefore I must look beyond the four corners of the policies for assistance in contract interpretation.

The Second Circuit, on more than one occasion, has stated that summary judgment is improper when resort to extrinsic evidence is possible to resolve ambiguities in an insurance contract. *See Payroll Express Corp. v. Aetna Casualty & Surety Co.,* 659 F.2d 285, 291 (2d Cir.1980); *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975); *Spencer, White & Prentis, Inc. v. Pfizer, Inc.,* 498 F.2d 358, 363–64 (2d Cir.1974). Most recently, in *Schering Corp. v. Home Insurance Company,* 712 F.2d 4 at 9 (2d Cir. 1983), the Second Circuit, when presented with a dispute between the drug manufacturer of of dienestrol, a cousin of DES, and its excess liability insurer over coverage for injuries resulting from the drug, held that "where contract language is susceptible of at least two fairly reasonable meanings, the parties have a right to present extrinsic evidence of their intent at the time of contracting. Summary judgment is perforce improper if conflicting evidence is adduced."

Emons and several amici argue that the CGL policies should be construed broadly to provide for maximum coverage and to effect Emons' contractual expectations. They further argue that when insidious dis-

eases are involved the policies should be deemed ambiguous to allow for application of the doctrine of *contra proferentem. See Schering v. Home Insurance Corp.,* 544 F.Supp. 613, 620 (E.D.N.Y.1982), *rev'd,* 712 F.2d 4 Nos. 83–7056, 83–7102 (2d Cir. June 21, 1983). Liberty and several amici propose an opposite interpretation of the CGL policies. They argue that the manifestation theory is supported by the insurance policies and further reflects the parties' expectations. They contend that this theory had broad support in case law at the time the policies were in effect.

Both sides and the amici have all submitted documents in support of their respective arguments. Although I agree with Emons that the policy language in question is susceptible to one of several interpretations, I am not convinced that Liberty's interpretation is unreasonable. The submissions herein refer to documents which may aid the court in resolving the ambiguities in the CGL policies.[5] Thus, the availability of conflicting extrinsic evidence to assist in resolving the instant dispute renders summary judgment inappropriate. *See Schering v. Home Insurance Corp.,* at 9; *Lowell v. Twin Disc, Inc.,* 527 F.2d 767, 770 (2d Cir.1975); *Dubay v. Trans-America Insurance Co.,* 75 A.D.2d 312, 314, 429 N.Y. S.2d 449, 452 (2d Dep't 1980).

The denial of plaintiff's summary judgment motion is consistent with the decisions relied upon by Emons in support of its motion. In *Vargas v. Insurance Co. of North America,* 651 F.2d 838, 842 (2d Cir. 1981), the Second Circuit refused to grant plaintiff summary judgment, even though his interpretation of the clause was more plausible than the defendant's, because the record indicated that defendant possibly could raise factual questions relating to the parties' intent. Similarly, *Hartford Accident & Indemnity Co. v. Wesolowski,* 33 N.Y.2d 169, 172, 305 N.E.2d 907, 909, 350 N.Y.S.2d 895, 898 (1973), and *Mallad Construction Corp. v. County Federal Savings*

---

**5.** In reaching this conclusion, I am not ruling on the admissibility of the various letters, reports, memoranda and articles relied upon by the parties and amici. Questions of authenticity and relevancy cannot be resolved through this motion.

& Loan Association, 32 N.Y.2d 285, 291–92, 298 N.E.2d 96, 100, 344 N.Y.S.2d 925, 930–31 (1973), are distinguishable from the case at bar because in those cases neither party presented relevant extrinsic evidence concerning the parties' intent at the time of contract.[6]

For several reasons I also reject Emons' invitation to grant summary judgment based on the Court of Appeals for the District of Columbia's decision in *Keene.* First, implicit in the *Keene* decision is a finding that the policy in issue was ambiguous and that the ambiguity could not be resolved by extrinsic evidence. *Keene*, 667 F.2d at 1041.[7]

Second, New York law—which both parties agree governs this case—may be at variance with *Keene.* In *American Motorist Insurance Co. v. E.R. Squibb & Sons, Inc.,* 95 Misc.2d 222, 406 N.Y.S.2d 658 (Sup. Ct.1978) ("American Motorist") the manifestation theory espoused by Liberty was adopted by that court under a similar insurance policy with respect to DES-related lawsuits. While Liberty agrees with Emons that ultimately *American Motorist* may not be dispositive, Emons has not convinced me that *American Motorist* can be disregarded. *See Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.,* 682 F.2d 12, 17 (1st Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 1280, 75 L.Ed.2d 500 (1983) (citing *American Motorist* as accepting manifestation theory); *Van Wyck Associates v. St. Paul Fire & Marine Insurance Co.,* 115 Misc.2d 447, 449, 454 N.Y.S.2d 266, 269–70 (Sup.Ct. 1982) (applying *American Motorist's* manifestation theory to property damage claim); *but see Schultheis v. Centennial Insurance Co.,* 108 Misc.2d 725, 727, 438 N.Y.S.2d 687, 689 (Sup.Ct.1981) (distinguishing *American Motorist*).

Finally, at this time I am not prepared for several reasons to embrace completely the logic of the *Keene* decision. First, the Second Circuit on numerous occasions has applied the manifestation theory to insidious disease lawsuits. *See General Dynamics Corp. v. Benefits Review Board,* 565 F.2d 208 (2d Cir.1977) (manifestation approach applied to workmen's compensation asbestos claims); *Travelers Insurance Co. v. Cardillo,* 225 F.2d 137 (2d Cir.), *cert. denied,* 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955) (same). These cases, however, were explicitly rejected by the *Keene* court. *Keene,* 667 F.2d at 1043 n. 17. Second, the *Keene* court was not applying New York law, which governs here. At least one New York Court has adopted the manifestation theory. *See American Motorist. Id.* at 1045. Moreover, New York courts are less likely to "vary the contract of insurance to accomplish its notions of abstract justice ... since, '[e]quitable considerations will not allow an extension of coverage beyond its fair intent and meaning in order to do raw equity and to obviate objections which might have been foreseen and guarded against.'" *Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 1283, 413 N.Y.S.2d 352, 355 (1978) (quoting *Weinberg & Holman, Inc. v. Providence Washington Insurance Co.,* 254 N.Y. 387, 391, 173 N.E. 556, 557 (1930)).

Emons' further argument that summary judgment is necessary to satisfy its reasonable expectations also cannot be resolved by way of the instant motion. Although case law in this Circuit indicates that an insured's reasonable expectations are relevant

---

**6.** This court's decision is not inconsistent with either *Aetna Casualty & Surety Co. v. General Tire Corp.,* 704 F.2d 80 (2d Cir.1983), or *Filor, Bullard & Smyth v. Insurance Co. of North America,* 605 F.2d 598 (2d Cir.1978), because both of these cases were decided after bench trials in which extrinsic evidence concerning the parties' intent was adduced. Indeed, *Aetna Casualty & Surety Co. v. General Tire Corp.,* was decided not by reliance upon *contra proferentem,* but rather by resort to settled rules of contract interpretation.

**7.** There is no indication in *Keene* whether the parties offered extrinsic evidence concerning their intent at the time of contract. Moreover, the District Court decision in *Keene* only makes reference to medical evidence concerning the etiologies of asbestos-related diseases and does not refer to DES-related diseases. *See Keene Corp. v. Insurance Co. of North America,* 513 F.Supp. 47, 49 (D.D.C.), *rev'd,* 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

to ascertain the meaning of an ambiguous insurance clause, *see Vargas v. Insurance Co. of North America, supra,* 651 F.2d at 842, Emons' submissions raise factual questions concerning its expectations of coverage.[8] Similarly, Emons' contention that it reasonably expected to stack its liability insurance (cumulate the policy limits contained in the various policies available to Emons) presents questions which cannot be resolved herein. The contract in issue contains an "anti-stacking" provision; thus, even though the contract itself may not be dispositive, there exists a genuine question of fact concerning Emons' reasonable expectations.

Finally, medical evidence which apparently is disputed with respect to the etiologies of DES-related injuries may be required to determine the meaning of the clauses in dispute.[9] Further proceedings may establish that the contracts in question are ambiguous after resort to extrinsic evidence. I will not, however, resort to the doctrine of *contra proferentem,* if at all, until all other avenues of contract construction have failed. *See Schering v. Home Insurance Corp.,* at 10 n. 2. Thus, it would be improvident at this time to preclude both parties from adducing evidence that may be pertinent to a proper determination. Accordingly, plaintiff's motion for summary judgment is denied.

The parties are ordered to report to Magistrate Buchwald for supervising a discovery schedule.

SO ORDERED.

---

**8.** In its Memorandum of Law, Emons candidly admits that it is "grossly underinsured by current economic standards for the early years of DES distribution. Not expecting injuries and litigation twenty to thirty years after selling a product, Emons carried what was then thought, by it and its carrier, to be adequate coverage." Plaintiff's Memorandum of Law at 38. In addition, as one amicus correctly observes, New York considers an insured's reasonable expectations as one factor to be evaluated in resolving an ambiguous contract clause, *see Miller v. Continental Insurance Co.,* 40 N.Y.2d 675, 676–77, 358 N.E.2d 258, 259–60, 389 N.Y.S.2d 565, 566–67 (1976), but not as an abstract concept to be used to define the scope of an insured's coverage.

**9.** *See* Mattingly Affidavit at ¶¶ 5–7.