## W. R. GRACE & CO. *vs.* MARYLAND CASUALTY COMPANY & others.[1]

No. 91-P-493.

Middlesex. May 21, 1992. - September 30, 1992.

Present: DREBEN, GILLERMAN, & PORADA, JJ.

*Insurance*, Comprehensive liability insurance, Coverage, Insurer's obligation to defend, Waiver, Notice, Multiple insurers. *Estoppel. Notice*, Insurance claim. *Practice, Civil*, Summary judgment, Report.

In an action for declaratory relief and damages brought by an insured against four of its insurers based on their failure to defend and indemnify in another action, the judge correctly determined that, since New York had the most significant relationship with the parties and their transactions, the law of New York should control. [362-363]

In an action brought by an insured against an insurer seeking declaratory relief and damages for a failure to defend and indemnify, where a material question of fact remained whether the claimed injuries occurred during the policy periods, neither the insurer nor the insured was entitled to summary judgment [363-364, 367]; moreover, on the basis of New York law, which applied in the circumstances, the insured was entitled to partial summary judgment declaring the insurer had a duty to defend as well as to reimburse the insured for legal fees and costs incurred in defending itself [364-365, 367].

In the circumstances of an action brought by an insured for declaratory relief and damages against an insurer for failure to defend and indemnify, the insurer was not entitled to summary judgment on the ground that other policies preceded its policy in order of priority and were sufficient to cover all claims, where the law of New York, which applied in the circumstances, would require the insurers to make pro rata contributions of payment for their assumption of the same risk. [365-366]

In an action against an insurer based on its failure to defend and indemnify its insured, summary judgment was properly ordered in favor of the insurer where the insured failed to give notice of a claim within the policy period, as required by the claims-made policy, and thus no coverage existed [367-369]; further, the insurer had no obligation to disclaim liability where the policy provided no coverage [369-370].

In an action for declaratory relief and damages brought by an insured against its insurers for failure to defend and indemnify in another ac-

---

[1]Continental Casualty Company, Hartford Accident and Indemnity Company, and Gibraltar Casualty Company

tion, where the judge had granted summary judgment to one insurer because the insured failed to give notice of claims as required by the policy, the judge, on the materials before her, should also have granted summary judgment in favor of another insurer that had issued an identical policy and that also had not received notice of claims. [370-371]

In a proceeding, governed by the law of New York, by an insured against its insurers, the insured had no right to designate which of two defendant insurers would respond to a loss. [371-372]

This court declined to review, as speculative and premature, a motion judge's determination of the order in which multiple insurers would provide payment in the event that any or all of the policies in question provided coverage. [372-373]

CIVIL ACTION commenced in the Superior Court Department on September 8, 1986.

The case was heard by *Katherine Liacos Izzo*, J., on motions for summary judgment and questions of law were reported by her.

*Charles R. Dougherty* (*Mark E. Klein*, of New York, with him) for the plaintiff.

*Marilyn E. Kerst*, of the District of Columbia (*Jo Anne B. Hennigan*, of the District of Columbia, & *Michael R. Coppock* with her) for Maryland Casualty Company.

*William J. Bowman*, of the District of Columbia (*John P. Ryan* with him) for Hartford Accident and Indemnity Company.

*Alice E. Richmond* for Gibraltar Casualty Company.

PORADA, J. W. R. Grace & Co. (Grace) brought an action in the Superior Court for declaratory relief and for damages against four of its insurers — Maryland Casualty Company (Maryland), Continental Casualty Company (Continental), Hartford Accident and Indemnity Company (Hartford) and Gibraltar Casualty Company (Gibraltar) — based on their failure to defend or pay defense costs and to indemnify Grace for the settlement of a lawsuit filed against Grace in the United States District Court for the District of Massachusetts. Each of the insurers denied coverage under its policy or claimed that another insurer should pay before its policy could be reached.

Grace filed motions for summary judgment against Hartford and Gibraltar on the grounds that they had no defense to the action as matter of law and that Grace had the right to select which insurer should pay its defense and settlement costs. Hartford and Gibraltar filed cross motions for summary judgment in which they contended that Grace had failed to make and report the claim during their policy periods and, consequently, that there was no coverage under their claims-made policies. Maryland moved for summary judgment against Grace on the grounds that the specific risk insurers — Hartford, Continental, and Gibraltar — should respond before coverage under its policy could be triggered and that Grace was judicially estopped from claiming coverage under Maryland's policy because in the Federal suit Grace had defended on the theory that it could not have caused the injuries in question until after 1979, which was six years after the last Maryland policy had expired.

The judge denied Grace's and Hartford's motions but allowed Gibraltar's and Maryland's motions. The judge then stayed all proceedings in the trial court and under Mass.R.Civ.P. 64, 365 Mass. 831 (1974), reported to this court her disposition of these motions and her ruling establishing the order of priority among these insurers should they be held liable. We affirm the judge's denial of Grace's motions for summary judgment and the allowance of Gibraltar's motion for summary judgment. We reverse the judge's allowance of Maryland's motion for summary judgment and the denial of Hartford's motion for summary judgment. For the reasons set forth in this opinion, we decline to rule on the order establishing priority among these insurers.

We summarize those facts which are not in dispute. In May, 1982, several individuals sued Grace in the Superior Court in Middlesex County for injuries resulting from exposure to chemicals disposed of by Cryovac, a division of Grace, in East Woburn between 1964 and 1979. That action, entitled Anne Anderson et al. *vs.* W. R. Grace et al., was removed to the United States District Court for the District of Massachusetts. On July 28, 1986, a Federal jury, in an-

swer to special questions, determined that Grace, at its Cry-ovac plant, had negligently disposed of two chemicals which contaminated the ground water supply of the city of Woburn by 1979. However, the jury was unable to determine when the contamination began. As a result, the Federal District Court judge allowed Grace's motion for a new trial. In September, 1986, Grace settled this suit for $8,000,000.

After the commencement of the Anderson litigation, Grace gave notice of the claim to all of its insurers who might be responsible for the Anderson claim. These included Maryland, which had sold primary comprehensive general liability. (CGL) policies to Grace from 1963 to 1973; Continental, which had sold a CGL policy from 1973 to 1976 and a primary environmental impairment liability policy (EIL) from 1981 to 1983 to Grace; Hartford, which had sold three excess EIL policies to Grace for the period between November 1, 1981, to June 30, 1982, and Gibraltar which had sold an excess EIL policy to Grace for the period between November 1, 1981, and June 30, 1982.

Maryland and Continental were required under their CGL policies to defend and to pay in full the costs of defense in all bodily injury lawsuits brought against Grace and to indemnify Grace fully for the amount Grace paid in settling or satisfying any judgment for any such suit if any portion of the alleged bodily injury occurred or could have occurred during their policy periods.[2] Continental, Hartford, and Gibraltar were required under their EIL policies with Grace to provide either a defense or to pay in full the costs of defense and to indemnify Grace for the amount paid in settling or satisfying any judgment in any action for bodily injuries arising out of an environmental hazard, if the claim was made and reported during the policy period. Under the CGL policies, de-

---

[2]The Maryland CGL policies are not part of our record nor apparently were they part of the record below. The Continental CGL policy was part of the record below but was not made part of the record presented to us. The parties, however, do not dispute that both the Maryland and Continental policies contained these provisions.

fense costs were not charged against the limits of liability but they were under the EIL policies.

Continental agreed to pay Grace's costs of defending the Anderson suit and Maryland agreed to share these costs with Continental subject to certain conditions. In March of 1986, Continental advised Grace that it had charged the defense costs in the Anderson action to its EIL primary policy and its policy limits of $3,000,000 were about to be exhausted. At that time, Maryland had made only one payment of $122,522 for the legal costs of the Anderson action and had refused to make any other payments. Grace then asked Hartford to pay Grace's continuing defense costs in the Anderson action. Hartford refused and stated that those costs should be borne by Continental and Maryland under the CGL policies sold to Grace. Grace then asked Continental to continue to pay the defense costs under its CGL policy. Continental refused on the ground that Hartford was obligated to pay defense costs under its excess EIL policies. As a result, Grace undertook its own defense and expended in excess of $3,598,267.17 in defense costs. Grace now seeks to recover from the defendants this amount, together with the sum of $8,000,000 which it paid to settle the Anderson litigation.

The initial question presented in this appeal is whether New York or Massachusetts law should govern the substantive law issues presented. The motion judge determined that New York law should apply. We agree. The insurers doing business in New York sold the relevant policies to Grace, a New York based conglomerate, after negotiating coverage with Grace's New York insurance broker, Marsh and McLennan, in that State. On the very same facts, the Supreme Judicial Court in *W. R. Grace & Co.* v. *Hartford Acc. & Indem. Co.*, 407 Mass. 572, 584-585 (1990), held that New York law would govern questions concerning coverage under Grace's comprehensive general liability policies for asbestos related claims. In doing so, the court noted:

> "Whether . . . there is a duty to defend or to indemnify under a nationwide comprehensive general liability policy . . . should not depend on the law of the jurisdiction

governing that particular claim but rather should be determined by the law governing the interpretation of the insurance policy and its issuance. Such a result produces coherent interstate insurance coverage; appears to conform to justified expectations; offers the prospect of certainty, predictability, and uniformity of result; provides relative ease in the determination and application of the governing law; and looks to the law of the State which, as to the legal issues involved, has the most significant relationship with the transaction and the parties. See *Bushkin Assocs.* v. *Raytheon Co.*, 393 Mass. 622, 631-634 (1985)."

*Id.* at 586. The same rationale applies to the EIL policies at issue. Since New York had the most significant relationship with the parties and the transaction, its law should control.

We now address each of the judge's orders reported to us for our review.

1. *Maryland's motion for summary judgment.* The judge allowed Maryland's motion on the ground that Grace failed to controvert Maryland's verified allegations that none of the injuries of the Anderson claimants occurred during Maryland's policy periods of 1963 to 1973. Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). *Madsen* v. *Erwin*, 395 Mass. 715, 719 (1985). Maryland had contended that Grace was judicially estopped from claiming that the Anderson plaintiffs' injuries occurred in the period from 1963 to 1973 because Grace had claimed in the Federal suit that none of the chemicals disposed at its Cryovac plant could have reached the wells until after they were closed in 1979, which was six years after the last Maryland policy expired. While the judge intimated that Grace would be estopped from asserting a different position in the State court, she determined that Grace had not done so, because it had failed to controvert Maryland's assertion that the Anderson claimants' injuries did not occur during the Maryland's policy periods. The judge concluded that since Grace had the burden of proving coverage under the Maryland policies and had not done so, Maryland was entitled to summary judgment as matter of law. *Kourouvacilis* v.

*General Motors Corp.*, 410 Mass. 706, 711-716 (1991). We do not agree.

Contrary to the judge's assertion that Grace had not controverted Maryland's allegations, Grace had filed a memorandum in opposition to Maryland's motion for summary judgment to which were attached a number of documents including a copy of the fourth amended complaint in the Anderson action and the verdict slip. That complaint alleged that as early as 1965 Grace deposited contaminants at a site adjacent to two wells which provided the plaintiffs with their domestic water supply between 1964 and 1979; that the contaminants migrated into the aquifer which supplied these wells; and that the ingestion of the contaminated water caused the plaintiffs or their decedents to develop leukemia, the injuries for which the plaintiffs sought recovery against Grace. Of the plaintiffs named in the complaint, three were alleged to have been born and diagnosed as having leukemia between 1963 and 1973. These allegations were sufficient to establish a material question of fact as to whether the contamination occurred during Maryland's policy periods and were sufficient to defeat summary judgment for Maryland.

Moreover, the judge overlooked the distinction between Maryland's duty to defend and its duty to indemnify. An insurer's duty to defend is broader than its duty to indemnify, and is triggered, irrespective of the insurer's ultimate duty to indemnify, whenever the allegations of a complaint fall within the scope of the coverage provided. *Seaboard Sur. Co.* v. *Gillette Co.*, 64 N.Y.2d 304, 310 (1984). *Servidone Constr. Corp.* v. *Security Ins. Co.*, 64 N.Y.2d 419, 424 (1985). See also *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318-324 (1983). In order for Maryland to have had no duty to defend Grace in this case, one would have to find as matter of law that, based on the pleadings, there was no possible factual or legal basis on which Maryland might eventually be held obligated to indemnify Grace under its policies. *Spoor-Lasher Co.* v. *Aetna Cas. & Sur. Co.*, 39 N.Y.2d 875, 876 (1976). See *Johnstown* v. *Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149 (2d Cir. 1989).

Here, the Anderson complaint clearly alleged claims for personal injuries which occurred during the years of Maryland's coverage. Maryland cannot escape its duty to defend on the grounds that Grace was judicially estopped from claiming that the contamination could have occurred during the period of Maryland's coverage. Under New York law, a party may not appropriately assert the defense of judicial estoppel unless it is demonstrated that the party against whom the estoppel is sought actually procured judgment in his favor as a result of the inconsistent position taken by him in a prior proceeding. *Hinman, Straub, Pigors & Manning, P.C.* v. *Broder*, 124 A.D.2d 392 (N.Y. 1986). A settlement by stipulation and discontinuance is not considered an adjudication in favor of a party as a result of an inconsistent position taken in a prior proceeding. *Ibid.* Since Grace settled the Anderson litigation, it is not now estopped from claiming coverage under the Maryland policies.

Nevertheless, Maryland argues that even if its policies covered the Anderson claim, it was entitled to summary judgment because the EIL policies of Continental, Hartford, and Gibraltar fully suffice to cover the Anderson claims and precede Maryland's CGL policies in order of priority of payment. Maryland bases its argument on the allegation that policies which are geared specifically toward a particular risk must respond before policies like CGL which provide more general coverage. See *Jorski Mill & Elevator Co.* v. *Farmers Elevator Mut. Ins. Co.*, 404 F.2d 143, 146 (10th Cir. 1968)("[a] blanket policy is ordinarily regarded as excess insurance over and above specific insurance and does not apply until the specific insurance has been exhausted"); *Caribou Four Corners, Inc.* v. *Truck Ins. Exch.*, 443 F.2d 796, 802-803 (10th Cir. 1971)(automobile insurance policy, as the specific policy, responds before CGL policy to claim arising out of unloading of truck); *Liberty Mut. Ins. Co.* v. *Home Ins. Co.*, 583 F. Supp. 849, 852 (W.D. Pa. 1984) (specific policy must pay in full before general policy responds); *Blue Anchor Overall Co.* v. *Pennsylvania Lumbermens Mut. Ins. Co.*, 385 Pa. 394, 400 (1956)(rule is clear that where there

are specific and blanket policies covering the damaged property, specific policies must pay in full, and if they are not sufficient, the blanket policies pay the difference up to their limits). This is not, however, the law of New York. *State Farm Fire & Cas. Co.* v. *LiMauro*, 65 N.Y.2d 369, 373 (1985). *Jefferson Ins. Co.* v. *Glen Falls Ins. Co.*, 88 A.D.2d 925, 926 (N.Y. 1982). See *National Grange Mut. Ins. Co.* v. *Continental Cas. Ins. Co.*, 650 F. Supp. 1404, 1413 (S.D.N.Y. 1986). The New York Court of Appeals in *State Farm Fire & Cas. Co.* v. *LiMauro*, 65 N.Y.2d at 373, stated: "As our case law has developed it has rejected as an exercise in 'meaningless semantics' the effort to determine which among policies covering the risk which occurred is the more specific (*Federal Ins. Co.* v. *Atlantic Natl. Ins. Co.*, 25 N.Y.2d 71, [1969])." Instead, New York has adopted the rule that where one or more insurers have assumed the same risk for an insured, each must contribute pro rata to the payment of the claim unless the rule would disturb the meaning of the terms of the policies involved. *Federal Ins. Co.* v. *Atlantic Natl. Ins. Co.*, 25 N.Y.2d 71, 78-79 (1969). *Continental Cas. Co.* v. *Equitable Life Assur. Co.*, 52 N.Y.2d 228, 233-235 (1981). *State Farm Fire & Cas. Co.* v. *LiMauro*, 65 N.Y.2d at 373. See also *Atlantic Mut. Ins. Co.* v. *Truck Ins. Exch.*, 797 F.2d 1288, 1294 (5th Cir. 1986) (analysis of New York law). Compare *Lumbermens Mut. Cas. Co.* v. *Allstate Ins. Co.*, 51 N.Y.2d 651, 655-656 (1980).

We, therefore, conclude that, under New York law, any difference in specificity between Maryland's CGL policy and the EIL policies of Continental, Hartford, and Gibraltar would not allow Maryland to withhold its response until after the EIL policies are exhausted. Rather, its liability, if any, would be prorated with other insurers who assumed the same risk for Grace and who may be found liable to pay defense costs or indemnity for the Anderson claim based on their relative policy limits. *State Farm Fire & Cas. Co.* v. *LiMauro*, 65 N.Y.2d at 374-376. *Atlantic Mut. Ins. Co.* v. *Truck Ins. Exch.*, 797 F.2d at 1294.

As a result, based on the allegations of the Anderson pleadings, we conclude that Grace should be granted partial summary judgment declaring that Maryland had a duty to defend Grace in the Anderson action and, further, that Grace is entitled to recover from Maryland reasonable legal fees and costs incurred in carrying out the defense of the Anderson action. On remand, the Superior Court shall determine the reasonable amount of those fees properly recoverable by Grace from Maryland. However, since the duty to indemnify is based on whether the Anderson claimants' injuries occurred from contamination of their domestic water supply during the period of Maryland's coverage, the material issue of fact in dispute, we conclude that full summary judgment is not warranted in favor of Grace against Maryland at this juncture. Under New York law, an insurer's breach of duty to defend the insured does not create coverage for the loss and, even in cases of negotiated settlements, there is no duty to indemnify unless there is first a covered loss.[3] *Servidone Constr. Corp.* v. *Security Ins. Co.*, 64 N.Y.2d 419, 423 (1985). See *Uniroyal, Inc.* v. *Home Ins. Co.*, 707 F.Supp. 1368, 1378 (E.D.N.Y. 1988).

2. *Gibraltar's motion for summary judgment.* The judge ordered summary judgment for Gibraltar based on her determination that Grace had failed to give notice of the claim to Gibraltar during its policy period, a condition precedent to coverage. Grace argues that this determination was wrong because it gave timely notice to Gibraltar and even if it did not, Gibraltar waived any late notice defense by failing to raise it in a timely fashion.

Gibraltar issued an excess EIL policy to Grace for the period of November 1, 1981, to June 30, 1982. Gibraltar's policy was in excess of the primary EIL policy issued by Continental and two excess EIL policies issued by Hartford to Grace. Gibraltar's policy provided: "It is agreed that except.

---

[3]The New York law is in contrast to Massachusetts law, which holds that an unjustified refusal to defend will render the insurer liable for both defense and settlement costs. *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 325-326 (1991).

only with respect to policy period, premium, and limits of liability, this policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the Continental Casualty Company's . . . Primary Policy (EIL 049657864) and all renewals and replacements thereof. It is further agreed that all pre-printed terms and conditions hereon are deleted to the extent that they vary from or are inconsistent with the terms and conditions of the Primary Policy." The Continental EIL primary policy provided that: "The company will pay on behalf of the insured for all sums in excess of the retained amount which the insured shall become legally obligated to pay for loss arising out of the environmental hazard, because of claims for personal injury, property damage or clean up expense provided always that [the] claim is first made against the insured and reported to the company during the policy period."

It is uncontroverted that the Anderson suit was commenced in May, 1982; that on June 23, 1982, Grace forwarded to Gibraltar a fifty-seven page application for renewal of its existing EIL coverage; that on the last page of this application in a listing of known environmental legal proceedings Grace listed the Anderson suit; that on January 31, 1983, Grace directed its insurance agent, Marsh and McLennan, to notify its EIL carriers of the Anderson claim; that on March 11, 1983, Marsh and McLennan sent what it identified as "first notice of loss" of the Anderson claim to Gibraltar for its policy period of 1982 to 1983; and that on April 15, 1983, Marsh and McLennan sent a notice of the Anderson claim to Gibraltar under its policy for the period of November 1, 1981, to June 30, 1982.

We agree with the motion judge that Grace's reference to the Anderson claim on the last page of its fifty-seven page application for insurance renewal of June 23, 1982, did not constitute notice of the Anderson claim. This information was inserted in a list of wholly unrelated underwriting data and submitted solely for the purpose of obtaining renewal of the policy. This notice did not comply with Gibraltar's policy provision that notice of a claim "shall contain. . . full and

complete information as may then be available concerning the occurrence." We conclude as matter of law that Grace did not give notice of its claim to Gibraltar until April 15, 1983, which was at least nine months after its policy of November, 1981, to June 30, 1982, had expired.

Grace contends that even if its notice of the Anderson claim was untimely, Gibraltar's failure to deny coverage on this ground until its answer to the first amended complaint in January of 1987 constituted a waiver of Gibraltar's right to deny coverage on this basis. We disagree.

Gibraltar's policy was a claims-made policy which conditioned coverage on two factors: (1) that a claim was first made against Grace during the policy period, and (2) that Grace reported the claim to Gibraltar during the policy period. Unless both requirements were met, no coverage existed. See *Security Mut. Ins. Co.* v. *Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440 (1972). See also *Chas. T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, 406 Mass. 862, 863-866 (1990). Where no coverage exists, there is no obligation on the part of the insurer to disclaim or deny coverage. *Zappone* v. *Home Ins. Co.*, 55 N.Y.2d 131, 134 (1982). *Fogelson* v. *Home Ins. Co.*, 129 A.D.2d 508 (N.Y. 1987).

Grace contends, however, that the statutory insurance law of New York requires insurance companies to give policy holders prompt written notice of disclaimers of liability and denial of coverage. New York Ins. Law § 3420(d) (McKinney 1985) (formerly N.Y. Ins. Law § 167[8]) provides:

> "If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant."

Grace overlooks the fact that, notwithstanding this provision, the New York courts have held that the failure to disclaim coverage does not create coverage which the policy was not written to provide. *Zappone* v. *Home Ins. Co.*, 55 N.Y. 2d at 138. See *Squires* v. *Islip*, 697 F.2d 66, 68 (2d Cir. 1982)("an insurer's failure to disclaim liability as literally required by the words 'deny coverage' in [former § 167(8)] does not obligate the insurer to disclaim liability for risks or occurrences that are not included in the express coverage of the policy").

When Grace gave notice of its claim to Gibraltar, its policy was no longer in effect. "[E]xtension of coverage cannot be attained by waiver." *Albert J. Schiff Assocs.* v. *Flack*, 51 N.Y.2d 692, 698 (1980). Waiver does not create coverage; the underlying coverage must exist before the doctrine of waiver is applicable. *Ibid.* See *Chas. T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, 406 Mass. at 865-866 (1990) (G. L. c. 175 § 112, which provides that an insurer may not rely on lateness of notice to avoid coverage in the absence of demonstrated prejudice to it deemed not applicable to claims-made policies because notice of the claim in the policy period is fundamental in determining whether coverage exists). Accordingly, we conclude that Gibraltar did not waive its defense of untimely notice and that, due to Grace's tardiness, summary judgment was properly ordered in Gibraltar's favor.

3. *Hartford's motion for summary judgment.* While acknowledging that Gibraltar and Hartford issued identical policies and received identical reports of the Anderson claim, the motion judge nevertheless denied Hartford's motion for summary judgment on the ground that the materials submitted by Grace and Hartford raised a factual issue whether Hartford had received actual notice of the Anderson claim in the policies' period. Hartford claims like Gibraltar that it is entitled to summary judgment because Grace failed to provide notice of the Anderson claim in the policies' period. We agree with Hartford's contention. Hartford was entitled to summary judgment based on the materials before the judge.

In distinguishing the result reached on Hartford's motion from that of Gibraltar, the judge noted that Grace did not file any opposition to Gibraltar's motion and did not by affidavit dispute the notice issue. The judge's conclusion is clearly erroneous. Grace did, indeed, controvert Gibraltar's claim of untimely notice in its memorandum of law dated November 6, 1987, filed in support of its motions for summary judgment against Gibraltar and Hartford and in opposition to Gibraltar's motion for summary judgment. Grace also filed an affidavit (the second affidavit of Jeffrey M. Posner) in which it asserted that it gave notice to both Gibraltar and Hartford of the Anderson claim in its application for renewal of its policies on June 23, 1982, and subsequently by letters dated March 11, 1983, and April 15, 1983. In denying summary judgment to Hartford, the judge also noted that an affidavit dated October 1, 1987, of one Vincent Badolato, an underwriter for Hartford, implies that he was aware of the Anderson suit earlier than June of 1982. However, there is nothing in the affidavit to indicate this. The affidavit simply recites that Grace's insurance broker submitted an application for EIL insurance to Hartford in 1981 and "[i]ncluded within the submission was a representation that Grace's Woburn plant — the plant involved in the lawsuit filed by Ann[e] Anderson and other Woburn residents for contamination of Woburn's drinking water — was simply a 'generator' of certain waste." The attached submission contained no reference to any claim by the Anderson litigants against the Woburn plant. We conclude that the materials before the judge did not establish a dispute over material fact regarding Hartford's notice of the claim and that summary judgment should have been granted to Hartford for the same reasons summary judgment was granted to Gibraltar.

4. *Grace's motions for summary judgment.* Since we have determined that summary judgment should be granted to Gibraltar and Hartford, we discuss only one aspect of Grace's motions. That is Grace's contention that it had the right to determine who should respond first among its multiple insurers to pay legal costs and to indemnify it for the Anderson

settlement. This argument was properly rejected by the judge in determining her order of priority among the multiple insurers.

Grace relied upon *Keene Corp. v. Insurance Co. of N. America*, 667 F.2d 1034, 1050-1051 (D.C. Cir. 1981), cert. denied, 455 U.S. 1007 (1982), to support its position that it has a right to select which policy will cover its liability. *Keene*, however, does not reflect New York law. *Abex Corp. v. Maryland Cas. Co.*, 790 F.2d 119, 121 (D.C. Cir. 1986). *American Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 565 F. Supp. 1485, 1490-1491 n.1 (S.D.N.Y. 1983), aff'd as modified, 748 F.2d 760 (2d Cir. 1984). *Emons Indus. Inc. v. Liberty Mut. Fire Ins. Co.*, 567 F. Supp. 335, 339 (S.D.N.Y. 1983). Applying New York law, the United States District Court for the Eastern District of New York expressly rejected an insured's right to designate which of two CGL insurers would respond to a loss on the ground that "such a formulation cannot help correlate risks insured with premiums charged." *Uniroyal, Inc. v. Home Ins. Co.*, 707 F. Supp. at 1391-1392.

5. *Order of priority among insurers.* The judge submitted for our review her determination of the order in which the multiple insurers should respond in the event that any or all of the policies provided coverage. She determined that the insurers should respond in the following order: Continental CGL, Continental EIL, Hartford EIL,[4] Hartford EIL, Hartford EIL, Gibraltar EIL, and Maryland CGL. We conclude, however, that we should not entertain a report of this question at this time. Absent a determination of coverage of the individual policies in the court below, the question is speculative and premature. *John Hetherington & Sons v. William Firth Co.*, 212 Mass. 257, 259 (1912)("if moot, speculative or subsidiary questions are reported they [should] not be considered"). *Angoff v. Angoff*, 1 Mass. App. Ct. 112, 115 (1973). See *Shabshelowitz v. Fall River Gas Co.*, 412 Mass. 259, 261 & n.2 (1992). While we recognize the judge's de-

---

[4]Hartford issued three separate excess policies to Grace. The third policy was issued together with Gibraltar.

sire to facilitate subsequent proceedings in the trial court, in all probability this has been accomplished by our determination that Hartford and Gibraltar are not liable for coverage and by the fact that the remaining EIL carrier, Continental, has exhausted the limits of its policy. As a result, the priority issue is not so significant as it once was, for the two remaining insurers whose liability is at issue are the two CGL carriers, Continental and Maryland.

6. *Conclusion.* The orders denying Grace's motions for summary judgment and allowing Gibraltar's motion are affirmed. The order allowing Maryland's motion for summary judgment is reversed as is the order denying Hartford's motion. For the reasons discussed above, we decline to answer the reported question of priority among the insurers. The case is remanded to the Superior Court for further proceedings (including the entry of judgments where appropriate) not inconsistent with this opinion.

*So ordered.*