**WALLACH MARINE CORPORATION
and Lawrence Wallach, Plaintiffs,**

v.

**DONZI MARINE CORPORATION,
Michael Collins and Terrence
Pearman, Defendants.**

**No. 87 Civ. 3906 (RWS).**

United States District Court,
S.D. New York.

Dec. 18, 1987.

Murray, Hollander, Sullivan & Bass, New York City, for plaintiffs; James J. Murray, of counsel.

Milgrim Thomajan & Lee, P.C. (William F. Kuntz, New York City, of counsel),

Thorp, Reed and Armstrong, Sarasota, Fla., for defendants.

## OPINION

SWEET, District Judge.

Defendants Donzi Marine Corporation ("Donzi"), Michael Collins ("Collins"), and Terrence Pearman ("Pearman"), have moved to dismiss the complaint of Wallach Marine Corporation ("Marine") and Lawrence Wallach ("Wallach") under Rules 9(b), 12(b) and 12(b)(6), Fed.R.Civ.P. The motion, which was argued and submitted on October 9, 1987, will be granted in part and denied in part as set forth below.

**The Complaint**

The complaint, taken as true for the purposes of this motion, *Pross v. Katz*, 784 F.2d 455, 457 (2d Cir.1986), was filed on June 4, 1987 and alleges seven causes of action and diversity jurisdiction. The first cause of action claims damages for breach of a contract concluded between Wallach and Donzi on January 7, 1986; the second claim alleges fraud and seeks recision; the third claim on the same basis seeks damages; the fourth alleges a violation of § 687(2) of the General Business Law, the New York Franchise Act, through the making of a false statement and the omission of a material fact and the engaging in a fraudulent practice; the fifth claim alleges the violation of General Business Law § 683, New York Franchise Act, for offering and selling a franchise without the registration and use of a prospectus; the sixth claim seeks damages for a breach of fiduciary duty; the seventh claim as set forth alleges prima facie tort. The defendants' motion to strike the seventh claim is unopposed (plaintiff's memorandum, p. 31).

The facts upon which these claims are based are set forth in Paragraphs 9–14 and in Paragraph 20 of the Complaint. According to these paragraphs, on January 7, 1987 Collins, a sales representative of Donzi, a builder of light speed boats, met Wallach at a boat show, offered him on his own behalf and on behalf of Marine, then a corporation to be formed, a Donzi dealership, (Complaint, Paragraph 9), "which would include the right to purchase, and then market and sell Donzi's products under its name and as an authorized dealer," (Complaint, Paragraph 10) exclusively in the Long Island, New York area for a period of one year.

Wallach and Marine are alleged to have accepted this offer and tendered a check for $50,000, "the consideration requested by Donzi for the right to do business as a Donzi dealer and franchisee." (Complaint, Paragraph 11). Subsequently, Marine and Wallach placed orders for 21 boats at a cost to them of $775,000 and received 10 boats at a cost of $383,614.00 (Complaint, Paragraph 12), and are alleged to have acquired interests in two boatyards for over $1 million. On May 14, Donzi terminated the dealership on 30–days' notice, intending to enter into a dealer and franchise agreement with a competitor who will pay a higher fee or agree to purchase more boats. (Complaint, Paragraphs 14 and 20).

In filing the opposition to the motion, Donzi, Collins and Pearman have filed an affidavit of Collins, asserting that he, as the sales representative of Donzi, had conversations with Wallach in December, 1986 and on January 7, 1987 relative to the formation of Marine and its participation in a Donzi dealership. The dealership, O'Neill's Boatyard, Inc. ("O'Neill's"), had previously entered into a Dealer Sales agreement with Donzi. According to Collins, any agreement for a dealership would be an annual agreement, limited to a model year which closed on June 31 of each year, and the $50,000 paid by Wallach was "a deposit against an order for fifteen Donzi boats ..." (Collins affidavit, sworn to August 7, 1987, Paragraph 8, 10). On January 9, 1987, according to Collins, Wallach signed and submitted an "application for Dealership," (the "Application"), a copy of which has been submitted, and the authenticity of which has not been challenged by Wallach.

The Application contains only a bank reference and Wallach's address and phone number, all other questions having been left blank. The Application contains two provisions, one that it creates no obli-

gations in the absence of a signed Dealer Sales Contract and another that any dealership arrangement is terminable by either party on thirty (30) days notice. The Collins affidavit also states that Wallach placed an order January 9, 1987 for $500,-000 of Donzi boats, (Collins' affidavit, sworn to August 7, 1987, Paragraph 9) that the Donzi boats were shipped C.O.D. (*Id.* Par. 15), that William Wallach sought to establish a joint venture with respect to an additional Donzi product, Z–65, as to which no purchase price was forwarded (*Id.* Par. 16), that Wallach on May 3, 1987 sought to sell Donzi products in Freeport, Long Island, and that on May 13, 1987 he and Pearman, a Donzi Senior Vice President, determined to cancel the relationship with Wallach and O'Neill, and Pearman so notified them both.

## Contract Claim

Wallach and Marine state that "defendant Donzi has completely ignored plaintiffs' detailed allegations of the *oral* agreement established by Wallach Marine as a Donzi dealer and franchisee. Contrary to Donzi's suggestions, it is this oral agreement which plaintiffs claim that Donzi has breached.[1]" (Plaintiff's Memorandum, p. 6–7, emphasis and footnote in original). Although the complaint does not make clear whether the alleged January 7, 1987 agreement is oral or written, the papers submitted bind the plaintiffs to that interpretation of their complaint.

■ A contract for the sale of goods that exceeds a $500 price is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought. New York Uniform Commercial Code § 2–201 (N.Y.U.C.C.). New York courts explicitly have ruled that this requirement applies to a dealership agreement. *Crabtree Automo-*

*tive, Inc. v. BMW of North America,* 105 A.D.2d 825, 482 N.Y.S.2d 28 (2d Dep't 1984); *Swerdloff v. Mobil Oil Corp.,* 74 A.D.2d 258, 427 N.Y.S.2d 266 (2d Dep't 1980).

In *Division of Triple T Service, Inc. v. Mobil Oil Corp.,* 60 Misc.2d 720, 727, 304 N.Y.S.2d 191 (Sup.Ct. Westchester Co. 1969), *aff'd,* 34 A.D.2d 618, 311 N.Y.S.2d 961 (2d Dep't 1970), the Court wrote that:

At first blush one might assume that the Uniform Commercial Code does not reach franchise or distributorship agreements.... However, the courts have not been reluctant to enlarge the type of commercial transactions clearly encompassed within the spirit and intendment of the statute.... Th[is] Court [has] noted in [another case]:

"In view of the great volume of commercial transactions which are entered into by the device of a lease, rather than a sale, it would be anomalous if this large body of commercial transactions were subject to different rules of law than other commercial transactions which tend to the identical economic result." [Quoting from *Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House,* 59 Misc.2d 226, 229, 298 N.Y.S.2d 392 (N.Y.Co.Spec.Term Pt. 1 1969)].

That reasoning would appear to be of persuasive force here since franchising presently accounts for at least twenty percent of all retail business ... [T]hat the retail dealer contract is not so alien in everyday commercial transactions and therefore falls within the purview of the Uniform Commercial Code seems clear....

Thus, absent a writing, an alleged oral agreement is unenforceable as it fails to comply with the statute of frauds. N.Y.U.C.C. § 2–201, since the complaint itself indicates products to be purchased by Marine

---

**1.** Indeed, Donzi fails even to address whether an oral agreement is pleaded. It merely asserts that there was no *written* agreement and claims alternatively that if there was such an agreement it was terminable on 30 days' notice (Defs' Brief, pp. 9–10). Defendants' attempt to rely on its "termination" letter (Exhibit B to the Collins

Affidavit) does not perforce establish a written agreement as in fact no written agreement existed in executed form. Nor does Exhibit B negate the oral agreement pleaded by plaintiffs which, of course, included *no such* 30 day termination right.

and Wallach were in excess of $500. Therefore, the first cause of action must be dismissed.

**Fraud**

For the purposes of this motion, the Collins' affidavit will be disregarded to the extent that it presents issues of fact relating to the nature of the representations made, Collins' intent, and the knowledge of the falsity of the representations.

Principles of notice pleading dictate that even arguably frivolous suits should not be dismissed before discovery unless the complaint fails to state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6) (advisory committee note). As Judge Friendly noted in *Yoder v. Orthomolecular Nutrition, Inc.,* 751 F.2d 555, 558 (2d Cir.1985), a court is "required to read the complaint with great generosity on a motion to dismiss." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957)).

Wallach's primary allegations of fraud are contained in paragraphs 9, 10, 21–27 and 28–30 of the complaint. These allegations supply the date of the fraud (January 7, 1987; Complaint, ¶ 9), the place (New York, N.Y.; Complaint ¶ 9), and the person committing the fraud (Collins, acting on behalf of Donzi; Complaint, ¶ 9). Further, the complaint alleges that the fraud consisted of Donzi's false statement to plaintiffs, made with knowledge of its falsity or with reckless disregard of its falsity, that Wallach Marine would be Donzi's exclusive dealer and franchisee in the Long Island Area for at least one year, and would continue thereafter as long as Marine and Wallach purchased boats from Donzi (Complaint, ¶¶ 10, 22 and 23).

The allegations are not merely conclusory and the defendants cannot argue that they have not been apprised of the acts that are alleged to constitute fraud. *Felton v. Walston & Co.,* 508 F.2d 577, 582 (2d Cir.1974). "No more is required by Rule 9(b)." *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985). Further, a broken promise to perform such as Donzi's promise to deal with Wallach Marine as its franchisee, may be construed as fraudulent for

purposes of this motion. *Cf. Newman v. C.F. Rothschild, Unterberg, Towbin,* 662 F.Supp. 957, Fed.Sec.L.Rep. (CCH) ¶ 93,303 (S.D.N.Y.1987) (Sweet, J.).

Here there is an alleged affirmative misrepresentation independent of a breached contract term which distinguishes this pleading from those that simply reiterate a contract breach cast in terms of fraud. *See Bower v. Weisman,* 650 F.Supp. 1415, 1422 (S.D.N.Y.1986).

The third claim for damages arising out of the fraud will be the subject of an election at an appropriate stage in this action. *See Prudential Insurance Co. v. BMC Industries,* 662 F.Supp. 436, 440–42 (S.D.N.Y. 1987) (collecting and discussing New York cases on election of remedies).

**Violation of the New York Franchise Act**

Contrary to the challenge of Donzi, Collins and Pearman, the complaint adequately alleges a franchise and the payment of a franchise fee (Complaint, ¶¶ 10, 11).

The defense that the relationship between the parties was not a franchise but rather a "purchase or agreement to purchase goods at a bona fide wholesale price," Gen.Bus.Law § 681(7)(a), and that the $50,000 was paid as a down payment, not a franchise fee, is factual and therefore does not constitute a ground upon which the complaint can be dismissed on this motion.

**Fiduciary Duty**

Wallach and Marine have cited no post N.Y. Franchise Act authority to support their claim that a fiduciary duty arises from the franchise relationship independent of the Act. In the light of *Mobil Oil Corp. v. Rubenfeld,* 40 N.Y.2d 936, 390 N.Y.S.2d 57, 358 N.E.2d 882 (1976), it may be concluded that the Act has become the exclusive remedy.

**Individual Jurisdiction**

No facts are alleged to establish that Collins and Pearman were acting in any other capacity than as officers and agents of Donzi, properly authorized. The

Collins' affidavit is not contravened in that regard, and therefore Collins and Pearman have sought to invoke the fiduciary shield defense.

Under the New York Civil Practice Law and Rules ("CPLR") personal jurisdiction over a non-domiciliary generally derives from § 302, the New York "long-arm" statute. Section 302(a)(1) confers personal jurisdiction over a non-domiciliary who, in person or through an agent, "transacts any business within the state...." CPLR 302(a)(1). Jurisdiction pursuant to CPLR 302(a)(1) depends upon the totality of the defendant's activity within the forum and a consideration of whether the defendant engaged in "purposeful activity in the State in connection with the matter in suit." *Trafalgar Capital Corp. v. Oil Producers Equipment*, 555 F.Supp. 305, 308 (S.D.N.Y. 1983).

However, courts in this state recognize an exception to this rule. While recognizing that a corporation can act only through its employees or agents, New York law provides that the individual agents or employees do not subject themselves individually to jurisdiction of the New York courts when they are acting for their corporate principal. *Laufer v. Ostrow*, 55 N.Y.2d 305, 313–14, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982). Therefore, long-arm jurisdiction cannot be asserted over an individual defendant based on acts performed by that individual in his capacity as a corporate official. *Goshen Litho, Inc. v. Kohls*, 582 F.Supp. 1561, 1565 (S.D.N.Y.1983). This "Fiduciary Shield Doctrine" protects individuals acting in their corporate capacity from being amenable to suit in this state in an individual capacity. *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 569 (S.D.N.Y.1985).

■ As to Collins, however, his allegedly tortious act in New York, the commission of fraud, under *CPC International Inc. v. McKesson Corporation*, 70 N.Y.2d 268, 519 N.Y.S.2d 804, 514 N.E.2d 116, Fed.Sec. L.Rep. (CCH) ¶ 93, 419 (1987) constitutes a jurisdictional basis under CPLR 302(a)(2).

As to Pearman, who never appeared in New York his letter of cancellation sent to Wallach and O'Neill does not submit him to jurisdiction under CPLR 302, *Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982).

**Punitive Damages**

■ As to the third cause of action which alleges fraud, Wallach and Marine seek punitive damages. No serious attack has been launched by Donzi and Collins on the proposition that fraudulent conduct can result in the imposition of punitive damages. *Flaks v. Koegel*, 504 F.2d 702, 706–07 (2d Cir.1974); *Aldrich v. Thomson McKinnon Securities, Inc.*, 756 F.2d 243 (2d Cir.1985) (punitive damage amount sustained on pendent New York law claims of fraud and breach of fiduciary duty), *Walker v. Sheldon*, 10 N.Y.2d 401, 404–05, 223 N.Y.S.2d 488, 490–91, 179 N.E.2d 497, 499–500 (1961).

However, mere fraud is insufficient to support a claim of punitive damages, and the malice alleged in Paragraph 20 of the Complaint incorporated into the fraud cause of action speaks only of malice at the time of contract breach. Further, the facts alleged constitute simply a commercial motive. *See Beir v. Manufacturers Hanover Trust Co.*, 110 A.D.2d 529, 488 N.Y.S.2d 1 (1st Dep't 1985) (punitive damages available only in cases where defendant acts with evil and reprehensible motives).

Therefore, the contract cause of action is stricken, the fraud causes remain, as well as the statutory actions against Collins and Donzi. The punitive damage claim is stricken. Leave to replead within twenty (20) days is granted.

IT IS SO ORDERED.