Robert **KENEVAN, Mary Pepe, Mildred La Bosco, and Irving Schmookler,** individually and on behalf of all others similarly situated, Plaintiffs,

v.

**EMPIRE BLUE CROSS AND BLUE SHIELD, Defendant.**

**No. 91 Civ. 2393 (KMW).**

United States District Court,
S.D. New York.

April 15, 1992.

Craig A. Landy and Brown & Seymour, New York City, for plaintiffs.

Robert A. Bicks, Breed, Abbott & Morgan, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Defendant moves to dismiss Plaintiffs' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court denies Defendant's motion.

## BACKGROUND

The Medicare program subsidizes the medical costs of persons 65 years of age or older, and those who are disabled. Medicare Part A generally covers inpatient hospital expenses and Part B covers particular medical expenses not covered by Part A, such as certain physicians' services. 42 U.S.C. §§ 1395 *et seq.* Under Part B of Medicare, the federal government generally covers "80% of the reasonable charges for services" after satisfaction of any deductible. 42 U.S.C. § 1395*l.* The subscriber is responsible for the remaining 20% of the Medicare approved charges (the "coinsurance amount"). Defendant offers various Medicare supplemental insurance policies to cover the deductible as well as the coinsurance amount that Medicare does not cover.

Under Part B of Medicare, some physicians accept "assignment" of patient claims against the Medicare program and others do not. Physicians who accept assignment of claims against the government for services rendered under Part B of Medicare

agree to accept the charges allowed by Medicare (including both the percentage paid by the government and the portion covered by the patient or the supplemental insurance provider) in full satisfaction of the bill for their services; these physicians also agree to submit their claims to, and receive reimbursement directly from, the carrier under the Part B program. *See* 42 U.S.C. § 1395u(b)(3)(B)(ii). In contrast, physicians who do not accept assignment of claims do not agree that the charges allowed by Medicare satisfy the bill for their services; these physicians receive full payment from their patients, who must seek reimbursement for the portion covered by the government and by their Medigap policies. As a result, patients of doctors who do not accept assignment of claims must cover the portion of the charges that exceeds the Medicare limits.

In 1985, Congress enacted the Gramm–Rudman–Hollings Act ("Gramm–Rudman") which was designed to reduce the federal deficit to zero by Fiscal Year 1991. Under the Act, payments made by the federal government under Medicare Parts A and B were to be reduced. Since 1986, the federal government has implemented the Act so as to reduce its Part B payments to Medicare beneficiaries by several percentage points. As a result, the coinsurance amount for which beneficiaries are responsible has been increased several percentage points over the original 20% figure for beneficiaries who visit doctors who do not accept assignment of Medicare payments. Beneficiaries with doctors who accept assignment of claims have not been affected by this change in government payments because their doctors absorb the loss by accepting lower reimbursement.

Plaintiffs' purported class consists of all claimants enrolled in Defendant's supplemental Medicare insurance contracts who submitted to Defendant their unassigned claims between January 1, 1988 and the present and who were denied full reimbursement of their coinsurance payments. Amended Complaint ¶ 7. By its amended complaint, Plaintiffs' purported class alleges that Defendant breached its supplemental Medicare insurance contracts, that Defendant violated New York Insurance Department Regulations, and that Defendant made statements in the course of marketing and selling its policies that constituted misrepresentation and fraud under New York law.

Based on language in the insurance contracts such as the provision that the policies cover the "coinsurance amounts that ... the Federal Medicare Program do [sic] not pay for," Plaintiffs allege that they "contracted with and paid premiums to [Defendant] in anticipation of receiving 100% reimbursement of the Medicare Approved Charge promised by [Defendant] for covered services." Amended Complaint ¶¶ 14 & 28. In light of Plaintiffs' expectations and the plain terms of the insurance contract, Plaintiffs further allege that Defendant failed to reimburse Plaintiffs adequately when it refused to cover the decrease in Medicare payments made toward their unassigned claims as a result of the government's efforts at deficit reduction pursuant to the Gramm–Rudman. Amended Complaint ¶¶ 1 & 18–21.

Those members of the Plaintiffs' purported class who held group insurance policies seek recovery of the benefits allegedly due to them under the terms of their insurance plans with Defendant pursuant to Section 502 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132(a)(1)(B) & 1132(c) ("ERISA"). Amended Complaint ¶¶ 30–33. Other members of the Plaintiffs' purported class, who obtained insurance policies directly from Defendant through individual contracts, seek recovery for the alleged breach of contract by Defendant pursuant to New York common law and pursuant to the New York State Insurance Department Regulations, 11 N.Y.C.R.R. §§ 52.11(a)(6) & 52.22(f). Amended Complaint ¶¶ 34–37. Finally, all members of the Plaintiffs' purported class seek recovery under New York common law for Defendant's alleged misrepresentation in the marketing and sale of its supplemental Medicare insurance policies. Amended Complaint ¶¶ 38–41. Pursuant to these claims, Plaintiffs' purported class seeks damages estimated to

exceed $5 million, reasonable attorneys fees and other costs and disbursements of this action, and other relief as the Court deems just and proper.

On May 2, 1991, Defendant moved to dismiss Plaintiffs' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Defendant argues that Plaintiffs have failed to state a cause of action upon which relief can be granted because Gramm–Rudman does not require supplemental Medicare insurance policies to cover the decrease in the government's payments under Part B of Medicare. Defendant also argues that the relevant contract language clearly and unambiguously requires no offsetting increase in the insurance copayments. For the reasons stated below, the Court denies Defendant's motion to dismiss.

## DISCUSSION

■ On a motion to dismiss, a district court must construe the complaint in favor of the pleader, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and it must accept as true the factual allegations made in the complaint. *See LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991) (citations omitted). The function of a district court in considering a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985), *citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984). A district court will not dismiss a complaint for failure to state a claim " 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686 (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

Defendant argues that Congress did not intend Gramm–Rudman to affect the coinsurance payments of Medicare benefi-

ciaries. (Def.'s Mem. at 8; Def.'s Reply Mem. at 3). Pointing to language in the House and Senate legislative histories with respect to Gramm–Rudman, Defendant states that Congress planned for the reductions in the government payments to be covered by doctors in the form of lower reimbursement rather than by beneficiaries in the form of higher coinsurance payments. (Def.'s Mem. at 8–9; Def.'s Reply Mem. at 3). Defendant goes on to claim that, if the Court holds that Defendant must cover the reduction in government Medicare payments under Gramm–Rudman, Defendant will pass the new costs onto its beneficiaries by raising its Medigap premiums. As a result, Defendant claims, the Court would frustrate the purpose of Congress in Gramm–Rudman. (Def.'s Mem. at 9).

In making this argument, Defendant fails to recognize the significance of the distinction between assigned and unassigned claims as well as the fact that Plaintiffs' purported class includes only patients whose doctors do not accept assignment of claims for Medicare purposes. As Plaintiffs point out in their reply papers, in spite of Congress' intention that the impact of Gramm–Rudman not fall on beneficiaries, the burden of the reductions of government payments necessarily falls upon beneficiaries in the case of unassigned claims. (Pl.'s Opp.Mem. at 13). While physicians with assigned claims have been barred from charging their patients more than 20% of the Medicare approved charge, those with unassigned claims have been able to charge the 20% plus the amount of the Gramm–Rudman cuts. (Pl.'s Opp.Mem. at 13). Furthermore, Defendant's argument that it will pass any new costs onto its beneficiaries in the form of higher premiums is irrelevant in light of the fact that, currently, its beneficiaries are bearing these costs directly due to Defendant's refusal to cover them. The Court therefore rejects Defendant's argument that a decision in favor of Plaintiffs would obstruct the goals of Gramm–Rudman.

Defendant also argues that its Medigap policies clearly state that they will cover

only "20% of the allowed charge as determined by Medicare." (Def.'s Mem. at 4). Claiming that "the 20% is simply the starting point of Empire's obligation," Plaintiffs point to language in the contracts and promotional brochures suggesting that Defendant's policies will fill the gaps that the government fails to cover under Medicare. (Pl.'s Opp.Mem. at 16). Plaintiffs therefore assert that Defendant's obligation "increases [over 20%] if the Federal government cuts back on the amounts of Medicare reimbursement." (Pl.'s Opp.Mem. at 16).

 Under New York law, courts must interpret insurance contracts so as to effectuate the intent of the parties at the time the contract was formed. *See Uniroyal, Inc. v. Home Ins. Co.,* 707 F.Supp. 1368, 1374 (E.D.N.Y.1988); *IBM Poughkeepsie Employees Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,* 590 F.Supp. 769, 772 (S.D.N.Y.1984). A court first must consider whether an insurance policy is clear or ambiguous, a threshold question of law. *See Pantone, Inc. v. Esselte Letraset, Ltd.,* 878 F.2d 601, 605 (2d Cir.1989). If a court finds that an insurance policy is ambiguous, it must consider extrinsic evidence to assist it in determining the mutual intent of the parties in entering the contract. *See Alfin, Inc. v. Pacific Ins. Co.,* 735 F.Supp. 115, 119 (S.D.N.Y.1990). Furthermore, once the court finds an ambiguity and turns to extrinsic evidence in interpreting an insurance contract, the insurer bears the heavy burden of proof of demonstrating that " 'it would be unreasonable for the average man reading the policy to [construe it as the insured does]' " and that its interpretation of the insurance policy provisions is the " 'only [construction] that fairly could be placed on the policy.' " *Vargas v. Insurance Co. of North America,* 651 F.2d 838, 840 (2d Cir.1981), *quoting Sincoff v. Liberty Mutual Fire Insurance Co.,* 11 N.Y.2d 386, 230 N.Y.S.2d 13, 16, 183 N.E.2d 899, 901 (1962).

 Defendant's interpretation, that the 20% reimbursement provision of its Medigap policies override all provisions requiring Defendant to cover the gaps in the government's coverage under Medicare, is not the only reasonable and fair construction of the policies. Although the policies state clearly that they cover "20 percent of the allowed charge as determined by Medicare . . .," they also contain language that might lead a prospective insured to believe that the policies cover the entire portion that the government does not pay under Medicare. For example, the cover page of the TraditionPlus Medicare Supplement Program states that the policy "fills in the . . . coinsurance amounts that . . . Part B of the Federal Medicare Program do[es] not pay for . . . ." This language clearly conflicts with the 20% language upon which Defendant relies, thereby creating an ambiguity in the policies. The TraditionPlus policy also states that it "automatically cover[s] . . . any increases in Part B approved medical costs resulting from increases in charges for professional and other care." (TraditionPlus Medicare Supplement Program Contract, at 3.) Although this provision probably does not cover the reduction in government payments under Medicare at issue in this case, a potential insured could interpret this language as an unconditional promise that the policy will fill the gap that the government does not pay. The Court finds that, read as a whole, the policies are ambiguous.

In addition to these ambiguous contract terms, Plaintiffs point to a New York State Department of Insurance regulation that could lead a potential insured to believe that Defendant's policies cover the entire coinsurance amount under Medicare. That New York insurance regulation requires that all Medigap insurance policies "be changed automatically to coincide with any changes in the applicable Medicare deductible amount and copayment percentage factors." 11 N.Y.C.R.R. § 52.22(f). In light of this regulation, a prospective insured might assume that any Medigap policy issued in New York would be updated in response to a change in the government payments under Medicare. Construing the complaint in Plaintiffs' favor, and in light of New York's insurance regulations, the Court finds that Defendant's policies are ambiguous. In light of the ambiguity that the Court finds upon construing the con-

tract as a whole, the Court will have to consider extrinsic evidence regarding the parties' intent upon entering the contract, and Defendant will bear the burden of demonstrating that " 'it would be unreasonable for the average man reading the policy' " to construe it in the same manner as the insured. *Vargas*, 651 F.2d at 840. Defendant's motion to dismiss Plaintiff's ERISA and common law breach of contract claims is denied.

■ Defendant also moves to dismiss Plaintiffs' claim for fraud and misrepresentation, arguing that Plaintiffs have attempted improperly to convert their contract claims into claims for fraud. (Def.'s Reply Mem. at 7). Plaintiffs allege that Defendant's promotional brochures fraudulently misrepresent its Medigap policies. Amended Complaint ¶ 40.

There is a split in New York case law regarding whether a cause of action for fraud can be created out of a claim for breach of contract when the only fraud charged relates to a breach of contract. Some courts have held that allegations that a defendant never intended to abide by the terms of an agreement are not sufficient to state a cause of action for fraud because one party's " 'failure to fulfill promises to perform acts in the future is a breach of contract, and not fraud.' " *Spellman v. Columbia Manicure Mfg. Co., Inc.*, 111 A.D.2d 320, 489 N.Y.S.2d 304, 308 (1985) (citations omitted). *See also Tesoro Petroleum Corp. v. Holborn Oil Co., Ltd.*, 108 A.D.2d 607, 484 N.Y.S.2d 834, 835 (1985) (stating that "[a] failure to perform promises of future acts is merely a breach of contract"). Other courts have held that a cause of action for fraud is stated when a plaintiff alleges that defendant made a fraudulent misrepresentation of intention in order to induce plaintiff to enter a contract. *See Bower v. Weisman*, 650 F.Supp. 1415, 1422–23 (S.D.N.Y.1986), *citing Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833, 835 (1958).

Here, the Court need not decide which line of cases to follow because Plaintiff has alleged misrepresentation that is independent of the breached contract terms. *See Wallach Marine Corp. v. Donzi Marine Corp.*, 675 F.Supp. 838, 841 (S.D.N.Y.1987). The court in *Wallach* found that plaintiffs' allegations that defendant made false statements in order to persuade plaintiffs to enter the contract constituted an "alleged affirmative misrepresentation independent of a breached contract term ... distinguish[ing] th[at] pleading from those that simply reiterate a contract breach cast in terms of fraud." *Id.* In this case, Plaintiffs point to language in Defendant's promotional brochure stating that Defendant's Medigap policies provide beneficiaries with "total protection" and that they "fill in the gaps of Medicare." Amended Complaint ¶ 40; Pl.'s Opp.Mem. at 22. The Court finds that these promotional provisions are distinct from Defendant's promise to abide by the contract and are sufficient to state a cause of action for fraud that is separate from Plaintiffs breach of contract claims.

## CONCLUSION

For the reasons stated above, the Court denies Defendant's motion to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

SO ORDERED.