**OLD COUNTRY TOYOTA CORP. and John S. Bucalo, Jr., Plaintiffs,**

v.

**TOYOTA MOTOR DISTRIBUTORS, INC., and Toyota Motor Sales, U.S.A., Inc., Defendants.**

No. 93 CV 5768(TCP).

United States District Court, E.D. New York.

March 27, 1997.

Scott A. Brody, Brody, Wolkofsky & Brody, Bellmore, NY, for plaintiffs.

Mary E. Tracey, Raymond M. Tierney, Jr., Shanley & Fisher, P.C., New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants TOYOTA MOTOR DISTRIBUTORS, INC. and TOYOTA MOTOR SALES, U.S.A., INC. (collectively "Toyota") move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Toyota argues that three of the four causes of action remaining in plaintiffs' OLD COUNTRY TOYOTA CORP. ("Old Country") and JOHN BUCALO's Second Amended Complaint are barred by the applicable statute of limitations and that plaintiffs' fourth cause of action is barred by the statute of frauds.

## BACKGROUND

Old Country, a corporation of which Bucalo was vice president and manager, was a franchise dealer of Toyota motor vehicles. Bucalo and others in his family owned all of Old Country's stock until the company sold its assets to John Staluppi on 2 October 1989.

A Toyota Dealer Sales and Services Agreement ("Dealer Agreement") governed Old Country's relationship with Toyota. Pursuant to the Dealer Agreement, Toyota sold motor vehicles to Old Country for re-sale to the general public.

Plaintiffs' first, second, and fifth causes of action allege that Toyota breached the Dealer Agreement by failing to allocate vehicles to Old Country in accordance with the terms of the Agreement. Any such breaches would have taken place prior to the 2 October 1989 sale to Staluppi. Plaintiffs also assert a right to have received a reasonable quantity of vehicles under New York's Franchised Motor Vehicle Dealer Act. Veh. & Traf. L. §§ 460–72. Plaintiffs' sixth cause of action alleges

that Toyota reneged on an oral agreement entered into on 28 September 1989, to allow Bucalo to become part of the new dealership as a shareholder and general manager upon completion of the sale to Staluppi.

Toyota argues that plaintiffs' claims relating to the Dealer Agreement are barred by the four year statute of limitations applicable to sale of goods contracts under the Uniform Commercial Code ("UCC"). UCC § 2–725. Toyota asserts that, in addition to being time barred, Bucalo's claim for breach of the alleged oral agreement is barred by the UCC's statute of frauds. UCC § 2–201(1).

## DISCUSSION

### A. Breach of the Dealer Agreement

Federal courts sitting in diversity are required to follow the statute of limitations rules of the forum state, *Guaranty Trust Co. v. York,* 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945), in this case New York.

Given a sufficient factual record, a district judge properly may determine as a matter of law whether an agreement falls under the UCC. *Triangle Underwriters, Inc. v. Honeywell Inc.,* 604 F.2d 737, 742 (2d Cir.1979). A contract is one for " 'service' rather than 'sales' when 'service predominates,' and the sale of items is 'incidental.' " *Triangle,* 604 F.2d at 742 (citation omitted). A contract must be considered one for sales when services are " 'merely incidental or collateral to the sale of goods.' " *Id.* at 743 (citation omitted).

Though to the Court's mind whether a dealership agreement properly falls under the UCC presents a difficult question, "New York courts explicitly have ruled that [the UCC] applies to a dealership agreement." *Wallach Marine Corp. v. Donzi Marine Corp.,* 675 F.Supp. 838, 840 (S.D.N.Y.1987) (Sweet, J.) (citing *Crabtree Automotive, Inc. v. BMW of N. Am.,* 105 A.D.2d 825, 482 N.Y.S.2d 28, 29 (App.Div.1984) (holding oral agreement to approve sale of BMW dealership void under UCC); *Swerdloff v. Mobil Oil Corp.,* 74 A.D.2d 258, 427 N.Y.S.2d 266, 267 (App.Div.1980) (holding oral promise to grant dealership void under UCC)). Though neither cited case analyzed the terms of the

agreements at issue, the policy impetus behind Judge Sweet's holding is compelling: "since franchising presently accounts for at least twenty percent of all retail business," it would be "anomalous" for ongoing franchise sales agreements not to be covered by the UCC. *Wallach Marine*, 675 F.Supp. at 840 (citations omitted) (holding oral franchise agreement unenforceable under UCC Statute of Frauds). Indeed, the meaning of "goods" under the UCC must be given broad scope "so as to carry out the underlying purpose of the Code of achieving uniformity in commercial transactions." *Coca–Cola Bottling Co. v. Coca–Cola Co.*, 696 F.Supp. 57, 85 (D.Del. 1988), *aff'd*, 988 F.2d 386 (3d Cir.), *cert. denied*, 510 U.S. 908, 114 S.Ct. 289, 126 L.Ed.2d 239 (1993). Consistent with that purpose, the Appellate Division has concluded that the granting of a franchise, as well as the franchisor's consent to the transfer of a franchise, are sales agreements covered by the UCC. *Crabtree*, 482 N.Y.S.2d at 29.

Courts "in virtually every jurisdiction that ha[ve] addressed this issue ha[ve] concluded" that dealership agreements are "predominantly for the sale of goods." *American Suzuki Motor Corp. v. Bill Kummer, Inc.*, 65 F.3d 1381, 1386 (7th Cir.1995); *see also Paulson, Inc. v. Bromar, Inc.*, 775 F.Supp. 1329, 1333 (D.Hawai'i 1991) (finding that sixteen jurisdictions have determined that the UCC applies to distributorship agreements). Notwithstanding such conclusions, this Court believes that, given their variety, the prudent course is to analyze the facts and terms peculiar to each agreement to determine whether it falls under the UCC. The Second Circuit's approach in a related context supports this conclusion. *See North Am. Leisure Corp. v. A & B Duplicators, Ltd.*, 468 F.2d 695, 697–98 (2d Cir.1972) (analyzing surrounding facts to determine that, in "essence," oral manufacturing agreement analogous to publishing agreement and thus not "sales" contract). *See also Wagstaff v. Protective Apparel Corp. of Am., Inc.*, 760 F.2d 1074, 1076–77 (10th Cir.1985) (analyzing facts to conclude distributorship agreement not "sale of goods" contract); *Wells v. 10–X Mfg. Co.*, 609 F.2d 248, 254–55 (6th Cir.1979) (finding manufacturing agreement not sales contract based on fact analysis). In addition to

agreement provisions and surrounding facts, courts have considered both agreement titles, *Triangle Underwriters*, 604 F.2d at 743, and the face of the complaint, *J.I. Hass Co., Inc. v. Kristal Assoc., Inc.*, 127 A.D.2d 541, 512 N.Y.S.2d 104, 105 (App.Div.1987), to reach their conclusions.

■ At bottom, the purpose of the Dealer Agreement was to provide for and regulate the ongoing sale of cars to Old Country. The prominence of the word "sales" and its location in the Agreement's title—"Toyota Dealer Sales and Service Agreement"—are revealing. The heart of the Agreement concerns "Sales of Toyota Products to Dealers," (Section VI), and "Promoting and Selling Toyota Products" (Section X). Section VI dictates the terms of automobile sales from Toyota to Old Country, including orders, deliveries, pricing, and warranties. Section X primarily concerns Old Country's obligations and the extent of Toyota's assistance relating to vehicle sales to the public. As with most of the Agreement, that provision reflects the intent to secure a continuum of sales—first from Toyota to Old Country, then on to the public—at the heart of the parties' bargain. The fact that the instant dispute concerns Toyota's "allocation" of units to be purchased by Old Country, (*see* Dealer Agree. at Sec. VI.B.5 ("Unit Allocation")), underscores that intent. As in *Triangle*, Toyota was compensated under the Agreement solely through the sale of vehicles to Old Country. *See Triangle Underwriters*, 604 F.2d at 743.

Though it may not be divorced from the rest of the Dealer Agreement, the "Unit Allocation" provision at issue has the core attributes of a requirements contract. Under the provision, Toyota agreed to supply vehicles to Old Country "in such quantities and types as are ordered ... subject to available supply." This is a classic requirements specification, with a quantity term that "measures the quantity by ... the requirements of the buyer." UCC § 2–306(1). The absence of a price term in the Unit Allocation provision also is typical of requirements contracts; "[t]he parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price

is a reasonable price at the time for delivery...." UCC § 2–305(1).

The Dealer Agreement's service and other provisions are collateral to its primary purpose of facilitating sales between Toyota and Old Country. Other than sales and sales promotions, the Agreement's substantive provisions concern premises maintenance, accounting methods, maintenance of net working capital, service, and display of Toyota marks. The premises maintenance and accounting provisions are housekeeping matters with little bearing on the Court's analysis. The Agreement does not actually address the only substantive matter not related to sales—the maintenance of net working capital—at all; the parties are directed to address that issue in a separate Working Capital Agreement. (Dealer Agree. at Sec. VIII.) The trademark provision merely grants Old Country the right to use the Toyota mark, and then only in connection with "selling" or "offering for sale" Toyota products. (Id. at Sec. XII.) Though the service provisions are substantial, their overarching purpose is to "protect the interests" (Id. at Sec. XI.A.) and "secur[e] and maintain[ ] the goodwill" (Id. at Sec. XI.B.2) of the buying public. Again, this is at bottom the language of sales.

In light of the foregoing, the Court holds that the Dealer Agreement is predominantly a requirements contract for the sale of goods valued at over $500 dollars and thus falls under the UCC. This holding is supported by the fact that franchise agreements account for a substantial percentage of modern commercial transactions, and is consistent with the legislature's goal in adopting the UCC of ensuring uniform legal treatment for similar commercial transactions.

Section 2–725(1) of the UCC provides that an "action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." A cause of action accrues when the alleged breach occurs. UCC § 2–725(2). Plaintiffs' commenced their suit on 15 November 1993, concerning actions that occurred before 2 October 1989. Because those actions fall outside the limitations period, plaintiffs' claims related thereto are barred by the four year statute of limitations of UCC § 2–725(1). Recovery may be had only on those contract claims falling within the limitations period. See *Bulova Watch Co., Inc. v. Celotex Corp.*, 46 N.Y.2d 606, 415 N.Y.S.2d 817, 820, 389 N.E.2d 130, 132–33 (Ct.App.1979).

Plaintiffs' argument that the Dealer Agreement is governed by the Franchised Motor Vehicle Dealer Act is meritless; plaintiffs have not even pled a cause of action under that Act, the provisions of which specifically are "in addition to and not in lieu of those contained in the uniform commercial code." Veh. & Traf. L. § 470.

## B. *Breach of the Oral Agreement*

Defendants argue that, because Toyota retains control under the Dealer Agreement to approve any change in ownership of the franchise, Bucalo's claim of breach of oral contract relates directly to the Agreement and is controlled by the UCC.

■ In the most authoritative statement from the courts of New York on the issue, the Appellate Division has ruled that an "action to recover damages for breach of an alleged oral agreement approving plaintiff as a[n automobile] dealer" falls under the UCC. *Country–Wide Leasing Corp. v. Subaru of Am., Inc.*, 133 A.D.2d 735, 520 N.Y.S.2d 24, 25 (1987) (citing *Crabtree* and *Swerdloff*). The court found that the agreement at issue "necessarily" involved the sale of goods valued at over $500 dollars.

In light of *Country–Wide*, the Court must hold that Bucalo's claim for breach of the oral agreement allegedly entered into prior to the sale to Staluppi is barred by the UCC's four year statute of limitations. Even absent the Appellate Division's ruling in *Country–Wide*, the same result would follow necessarily from the Court's holding that the Dealer Agreement is governed by the UCC and the fact that Toyota's power to approve any change in ownership derives from the Agreement. Bucalo's claim must be dismissed in any event because it was not sufficiently pled.

### CONCLUSION

Based upon all of the foregoing, defendants' motion for summary judgment on plaintiffs' breach of contract claims relating to actions that occurred prior to 2 October 1989, must be, and the same hereby is, GRANTED. Defendants' motion as to the alleged oral agreement between Toyota and Bucalo likewise must be, and the same hereby is, GRANTED.

SO ORDERED.