Grasso, J.
Plaintiff, Frank I. Rounds Co. (“Rounds"), filed this breach of contract action on May 27, 1994, seeking damages incurred as a result of defendant Lumbermens Mutual Casualty Co.’s (“Lumbermens”) refusal to defend Rounds against claims brought by Mary Hitchcock Memorial Hospital *116 for damages which resulted from a boiler overheating. The parties are now before the Court on Rounds’ motion for summary judgment. Lumbermens opposes the motion. For the reasons set forth below, Rounds’ motion for summary judgment is ALLOWED IN PART and DENIED IN PART.
BACKGROUND
The facts, viewed in the light most favorable to the Lumbermens, are as follows:
Rounds sells, services and supervises the installation of boilers and ancillary boiler equipment throughout the Northeast. In 1988, Rounds contracted with John P. Bell & Sons, Inc. (“Bell”), a mechanical subcontractor, to furnish the boilers and ancillary equipment for the construction of the Dartmouth Hitchcock Medical Center (“Hitchcock”) in Lebanon, New Hampshire. [1] In addition to requiring Rounds to furnish the boilers and ancillary equipment, the contract between Rounds and Bell stated that: “ALTHOUGH BELL HAS ISSUED THREE PURCHASE ORDERS . . . FOR THE BOILERS AND ASSOCIATED EQUIPMENT FOR THE DARTMOUTH-HITCHCOCK MEDICAL CENTER, FRANK I. ROUNDS COMPANY WILL ASSUME THE SYSTEM RESPONSIBILITY FOR THE COMPLETED SYSTEM OPERATING IN ACCORDANCE WITH THE CONTRACT DOCUMENTS.”
On September 7, 1990, a boiler at the Hitchcock overheated during start-up and testing, causing damage to the boiler, the ancillary equipment, and to the medical center itself. At the time of the accident, Rounds had a Comprehensive General Liability Policy with Broad Form Endorsement (“GLP”) with Lumbermens. As required by the GLP, Rounds immediately notified Lumbermens of the boiler accident.
On July 20, 1992, Lumbermens informed Rounds that the GLP did not cover the accident. As justification, Lumbermens cited these grounds:
1. exclusion “n” of the GLP, which excluded coverage for property damage to the named insured’s products arising out of such products or any part of such products;
2. Section VI(A)(2)(d) of the Broad Form Comprehensive General Liability Endorsement which sets out an exclusion for
that particular part of any property, not on the premises owned by or rented to the insured, (i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or (ii) out of which any property damage arises, or (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured . . . ;
3. Section VI (A) (3) of the Broad Fore Comprehensive General Liability Endorsement which excludes
coverage with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company’s manual as “including completed operations,” to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith;
and
4.Exclusion §1 (B)(2) of the Broad Form Comprehensive General Liability Endorsement which states that
1. Contractual Liability Coverage
B. [t]he insurance afforded with respect to liability assumed under an incidental contract is subject to the following additional exclusions:
(2) if the insured is an architect, engineer or surveyor, the coverage does not apply to “property damage arising out of the rendering of or the failure to render professional services by such insured, including
(a) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and
(b) supervisory, inspection or engineering services . . .
On September 3, 1993, Hitchcock filed suit against Rounds to recover for the property damage to the boiler, piping, burners, staging, and other associated equipment, as well as for damage to the medical center itself and for all consequential damages therefrom. On October 6, 1993, Lumbermens notified Rounds that it would not defend Rounds in the Hitchcock suit. Following Lumbermens refusal to defend, Rounds settled Hitchcock’s $310,000 claim for $25,000.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner Of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party has the burden of affirmatively demonstrating the absence of a triable issue and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party establishes the absence of a triable issue, the party opposing the motion must allege specific facts which establish the existence of a genuine issue of material fact in order to defeat the motion. Pederson v. Time, Inc., supra at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion of summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
A. Lumbermens’ Duty to Defend Rounds
Under the GLP Rounds purchased from Lumbermens, Lumbermens agreed to pay all sums *117 which Rounds became legally obligated to pay as damages resulting from property damage to which the insurance applied if such damage was caused by an “occurrence” as that is defined in the policy.[2] Additionally, the GLP provided that Lumbermens “shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent
It is undisputed that the complaint in the underlying action alleges that the property damage resulted from an “occurrence.” Therefore, unless an exclusion applies, Lumbermens was required to defend Rounds against the Hitchcock suit. See Camp Dresser & McKee, Inc. v. Home Ins. Co., 30 Mass.App.Ct. 318, 322 (1991).
It is settled in this jurisdiction, and generally elsewhere, that the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense: Otherwise stated, the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.
Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983) (internal citations omitted); SCA Services v. Transportation Insurance Co., 419 Mass. 528, 532 (1995).
In order for a duty to defend to arise, “the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.”[3] Sterilite Corp. v. Continental Casualty Co., supra at 319, quoting Union Mut. Fire Ins. Co. v. Topsham, 441 A.2d 1012, 1015 (Me. 1982). When the scope of coverage provided or excluded by a clause is unclear, the policy should be read so as to provide coverage to the insured. SCA Services v. Transportation Insurance. Some of the liability claims asserted against Rounds fall within the insurance coverage. See Sterilite Corp. v. Continental Casualty Co., supra at 319. Exclusion “n,” therefore, did not abrogate Lumbermens’ duty to defend. See Sarnafil Inc. v. Peerless Insurance Co., 418 Mass. 295, 303 (1994).
Section VI(A)(2)(d) of the Broad Form Comprehensive General Liability Endorsement excludes from coverage
that particular part of any property, not on the premises owned by or rented to the insured, (i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or (ii) out of which any property damage arises, or (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured . . .
Although Rounds had “system responsibility for the completed system operating in accordance with the contract documents,” Rounds was not present at the property when the boiler overheated, nor was anyone who was working on its behalf. The boiler overheated during start-up which was performed by Northeast Mechanical, another subcontractor hired directly by the boiler manufacturer, Cleaver Brooks. Furthermore, Rounds did not provide all of the ancillary equipment associated with the installation of the boilers. Thus, the underlying complaint is reasonably susceptible to the interpretation that the boiler malfunction occurred as a result of work done or equipment furnished by other than Rounds and that damage occurred to property not supplied or worked on by Rounds. Therefore, the exclusions outlined in §VI(A)(2)(d) did not relieve Lumbermens of its duty to defend Rounds.
Lumbermens also argues that Section VI(A)(3) of the Broad Form Comprehensive General Liability Endorsement excludes coverage
with respect to the completed operations hazard[4] and with respect to any classification stated in the policy or in the company’s manual as ‘including completed operations,’ to properly damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.
The boiler failed during start-up and testing. Under the contract between Rounds and Bell, Rounds had responsibility for the system operating in accordance with the contract. By Hitchcock’s allegations, at the time of the accident Rounds’ work on the project was not complete. Therefore, this exclusion does not apply.
Finally, under the broad form endorsement, “(t]he definition of incidental contract is extended to include any oral or written contract or agreement relating to the conduct of the named insured’s business.” However, under §1 (B)(2), if the insured is an architect, engineer or surveyor, the coverage does not apply to “property damage arising out of the rendering of or the failure to render professional services by such insured, including (a) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and (b) supervisory, inspection- or engineering services . . .” Rounds is neither a architect, engineer, nor surveyor. Thus, this exclusion has no application.
*118 Because none of the exclusions cited by the defendant relieved Lumbermens of its duty to defend Rounds, Lumbermens is liable for the costs Rounds incurred in its defense of the underlying action. W.R. Grace v. Maryland Casualty, 33 Mass.App.Ct. 358, 367 n.3 (1992), rev. denied 413 Mass. 1109 (1992); Camp Dresser v. Home Insurance, 30 Mass.App.Ct. 318, 326 (1991).
B. Lumbermens’ Duty to Indemnify Rounds for the Settlement Amount
Lumbermens’ duty to indemnify is distinct from and more circumscribed than its duty to defend. See Sterilite Corp. v. Continental Casualty Co., supra at 318 n.4. Whereas Lumbermens had a duty to defend Rounds in the underlying action, its duty to indemnify “does not ineluctably follow from the duty to defend.” Newell-Blais Post #443, Veterans of Foreign Wars of the U.S., Inc. v. Shelby Mut. Ins. Co., 396 Mass. 633, 638 (1986). Because genuine issues of material fact exist regarding what equipment Rounds manufactured, sold or furnished for the Hitchcock project, who was responsible for the installation of the various pieces of equipment, who was responsible for boiler start-up, and what the actual cause of the boiler overheating was, the issue of indemnification must await the completion of trial. However, because Lumbermens wrongfully refused to defend Rounds, it will have the burden of proving that the Hitchcock claims were not within its policy’s coverage. See Polaroid Corp. v. The Travelers Indemnity Co., 414 Mass. 747, 764 (1993).
C. Lumbermens’ Duty to Indemnify Rounds for the Cost of this Action.
Plaintiff argues that Lumbermens is liable for Rounds legal costs in instituting this action because the action was necessitated by Lumbermens wrongful conduct in denying its duty to defend. However, without a showing of bad faith, fraud or stubborn litigiousness, which has not been made here, this Court finds that Lumbermens is not liable for these costs.
ORDER
For the foregoing reasons, Plaintiff Frank I. Rounds Co.’s motion for summary judgment is ALLOWED IN PART and DENIED IN PART.
1. Plaintiff Frank I. Rounds Co.’s Motion for Summary Judgment is ALLOWED with respect to plaintiffs claim for attorneys’ fees for defending the underlying action brought by Mary Hitchcock Memorial Hospital. Defendant Lumbermens Mutual Casualty Company shall pay Frank I. Rounds Co. $9,969.00 plus interest calculated from the date the legal expenses were actually incurred.
2. Plaintiff Frank I. Rounds Co.’s motion for summary judgment is DENIED with respect to its claim for indemnification for the actual settlement amount.
3.Plaintiff Frank I. Rounds Co.’s motion for summary judgment is DENIED on its claim for indemnification for legal costs in bringing this action.

Rounds claims that it did not supply the boilers, that those were ordered by Bell directly from the manufacturer and that it supplied only a part of the ancillary equipment for the job.

An “ ‘occurrence’ means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured."

fyhe duty to defend is based not only on the allegations in the complaint, but also upon the facts that are known or readily knowable by the insurer. Camp Dresser & McKee v. Home Ins. Co., 30 Mass.App.Ct. 318, 322 (1991).

“Completed operations hazard” includes . . . property damage arising out of operations or reliance upon representation or warranty made at any time with respect thereto, but only if the . . . property damage occurs after such operations have been completed or abandoned . . .
“Operations” include materials, parts or equipment furnished therewith. Operations shall be deemed completed the earliest of the following times:
(1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed;
(2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.